87 So.2d 124

LeRoy ORTEGO et al.

v.

E. A. CALDWELL.

No. 42275.

March 26, 1956.

Fusilier & Vidrine, R. J. Vidrine, Ville Platte, for plaintiffs-applicants.

Dubuisson & Dubuisson, Opelousas, for defendant-respondent.

FOURNET, Chief Justice.

We granted certiorari to review the judgment of the Court of Appeal, First Circuit, reversing the district court's judgment and dismissing the suit of plaintiffs Laurent R. Lafleur and LeRoy Ortego to recover for damage to their crops and to the land belonging to the former by water which flooded the property because of the alleged failure of defendant to construct a levee on plaintiff's property in accordance with his contract with the Louisiana Highway Commission to rebuild a public road bordering the said property. See La.App., 77 So.2d 151.

The record discloses that plaintiff Lafleur's property, situated in Evangeline Parish, abuts La. Highway 119, formerly a narrow gravel road with a levee alongside, the said levee having been in existence for some sixty years and having served to prevent the water in ditches along side the highway from flooding plaintiff's fields—presently used for the growing of cotton, potatoes, etc., with the plaintiff Ortego as a tenant on a share crop basis. A project, to be undertaken in 1952, was the blacktopping of the highway, and in order to broaden the existing road it was necessary to take in that portion of the land adjoining the highway on which the levee stood. The contract for the road construction was awarded by the Department of Highways to the defendant, E. A. Caldwell; it provided for replacement of the levee by another, to be constructed within Lafleur's fence, and contained a special provision that the owner was to be satisfied. The levee was constructed between January 2 and January 20, 1952, and with the spring rains many breaks developed. Repairs were made by the defendant but other soft spots gave way, water broke through the levee and spread over the fields with resulting crop loss and damage to top soil—the most serious damage having taken place in May, 1952; this suit followed.

The trial judge, in a well considered opinion, observing that while there were no specifications covering the construction of the levee on plaintiff's property other than that the old levee was to be replaced by a single line rice levee [1] parallel to the road but inside the landowner's fence, he found after hearing all the evidence in the case that there was a provision in the contract that the levee was to be of the same efficiency and strength as the old levee and to the satisfaction of the landowner, and concluded that it was

1. Such a levee, according to testimony in the record, is of a standard form, with a two foot crown and a slope of one and one-half to one—there being no requirement as to height, which of necessity depends on the width of the base.

very obvious that the new levee did not meet those requirements. The loose dirt used to construct the levee had simply been graded, without being packed or staked or otherwise made sufficiently firm and strong to withstand the pressure of water from the highway ditches; and that consequently the contractor was liable for the resulting damages, which he found to be $283.32 and $266.68, respectively, for Lafleur and Ortego, with legal interest from judicial demand.

The Court of Appeal, in reversing the judgment of the District Court, did not seriously consider plaintiffs' contention that the contract contained a stipulation pour autrui, it being the court's opinion that, assuming such a contention to be valid, under the holding of the Court of Appeal, Parish of Orleans, in Schott v. Ingargolia, La.App., 180 So. 462, 463,[2] inasmuch as the construction of the levee had been completed and accepted by the Department of Highways on January 20, 1952, for which work defendant had been paid in full, he, the defendant contractor, was absolved of liability for faulty construction not only as to the department but as to any third persons who would have benefited under the stipulations of the contract. In so holding the court maintained the contention of counsel for the defendant, which had been considered

and rejected by the trial judge whose opinion it was that the rule governing the Schott case is inapplicable to the factual situation here presented.

We agree with the trial judge that the rule applied in Schott v. Ingargolia, under the facts of this case, is inapplicable. The Court of Appeal fell into the error of concluding that the levee work had been accepted and paid for on the 20th of January, 1952, because of the fact that on that date a payment was made to the defendant contractor, and the levee work had been performed during the previous 18 days, which were covered by the payment; but the Court failed to take into consideration that on the 20th of each month during the progress of the work, the contractor was paid a sum, representing partial payment of his rough estimate of the cost of work done during the 30 day period, with retention by the Department of Highways of 10% of such estimate for use, if necessary, in correctional work. The levee was constructed in the very beginning of the work on the project, when workmen were just starting the dirt work for the highway, after the fences had been moved, and necessarily it cannot be said that Caldwell's work was approved until the final acceptance of the project covered by the contract—which

2. The case followed the general rule, as stated in 14 Ruling Case Law, Sec. 42, from which the quotation is taken that " * * * an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result from the contractor's failure to properly carry out his contract.' "

could not have taken place before November of 1952 because construction of the highway, according to the record, was not completed until that time. Although the defendant contractor denies that there was any complaint made to him about the unsatisfactory construction of the levee by the landowner Lafleur or by anyone on his behalf, it is nevertheless clear that Lafleur's acceptance or approval of the work was never sought and it is equally clear that after each break occurring during this period of construction repairs were undertaken by the defendant contractor but the levee never served its purpose until it was repaired and properly packed by the landowner.

◼ A perusal of the record reveals that the Department of Highways, in order to obtain the necessary width required to reconstruct Highway No. 119, had to acquire property from abutting owners, including the plaintiff Lafleur—who agreed to relinquish a strip along the highway and in

exchange received the promise that the levee would be rebuilt to protect crops and his land from highway drainage; and in the contract for the construction of the highway, it was stipulated between the Department of Highways and the defendant Caldwell that the latter would replace the old levee to the satisfaction of the owner. Not only was such an agreement binding on the defendant Caldwell, but it could not have been revoked once Lafleur availed himself of the advantages stipulated in his favor, LSA–Civil Code, Article 1890;[3] and consequently Lafleur and his tenant, for whose benefit the stipulation in the contract was made, have an equitable action[4] against the defendant-obligor for the damages suffered as a result of his faulty performance of his obligation, LSA–Civil Code, Articles 1930 and 2769.[5]

For the reasons assigned the judgment of the Court of Appeal is annulled and set aside and the judgment of the District Court is affirmed, defendant to pay all costs.

3. "A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked." See, also, Article 1902, LSA–Civil Code.

4. La.Code of Practice, Article 35, declares: "An equitable action is that which does not immediately arise from a contract, but from equity, in favor of a third person, not a party to it, and for whose benefit certain stipulations have been made; * * *."

5. "The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default." Art. 1930.

"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." Art. 2769.