95 So.2d 705 (1957)
Harvey A. KING, Plaintiff-Appellee-Appellant,
v.
C. N. MASON, doing business as C. N. Mason Company, et al., Defendants-Appellants.
No. 8605.
Court of Appeal of Louisiana, Second Circuit.
January 7, 1957.
On Rehearing May 27, 1957.
Writ of Certiorari Granted June 28, 1957.
*708 Provosty, Sadler & Scott, Stafford & Pitts, Alexandria, for appellants.
Parker & Parker, Jena, for appellee-appellant.
Martin S. Sanders, Jr., Olla, for appellee Town of Jena.
AYRES, Judge.
Plaintiff instituted this action to recover damages for personal injuries sustained by him in a natural gas explosion at the residence of one T. J. Kendrick, situated in the Town of Jena, Louisiana, where he was engaged as a plumber's helper in resetting a commode in a bathroom of said residence on January 27, 1955. The explosion demolished one of the bathroom walls and the gas became ignited, severely burning plaintiff and setting fire to the residence, which was destroyed in the fire.
Made defendants were the Town of Jena, which owned the gas distribution system; C. N. Mason, doing business as C. N. Mason Company, who had only recently completed the installation of a sewer system in and for the Town pursuant to a contract with the aforesaid municipality; United States Fidelity and Guaranty Company, Mason's insurer, and F. P. Joseph Associated Engineers, a partnership, and the individual members thereof.
All defendants filed and urged in the court below exceptions of no cause and of no right of action, which were sustained only as to the defendants, F. P. Joseph Associated Engineers, and its individual partners. Plaintiff did not appeal from this ruling. They are, therefore, not presently before the court. The defendants as to whom the exceptions were overruled have not urged the exceptions on appeal and the exceptions, therefore, may be considered as abandoned.
After trial on the merits, there was judgment in plaintiff's favor against the defendants, C. N. Mason and the United States Fidelity and Guaranty Company, in solido, for $4,653, with legal interest thereon from judicial demand until paid, and for all costs, and maintaining the attachment levied on the property and funds of C. N. Mason and recognizing plaintiff's lien and privilege resulting therefrom. Plaintiff's demands as to the Town of Jena were rejected.
From this judgment, C. N. Mason and the United States Fidelity and Guaranty Company appealed suspensively and devolutively to this court. Plaintiff, asserting that the award was inadequate, likewise appealed from the judgment in that respect, *709 as well as from that portion rejecting his demands as against the Town of Jena.
There is no serious dispute as to the material facts. A brief summary, however, appears in order for a proper understanding of the issues as they will be discussed. As heretofore stated, the Town of Jena owns and operates the natural gas distribution system in the municipality. On September 25, 1953, C. N. Mason, doing business as C. N. Mason Company, signed a contract with the Town to construct and install a sewerage collection system for the municipality. The work under this contract began November 1, 1953. On December 13, 1954, Mason met with the Mayor and Board of Aldermen in a meeting held relative to the elimination from the contract of the resurfacing and graveling of the streets. This being accomplished, the work of Mason under the contract was accepted by the municipality the following day, December 14, 1954, upon the filing of the final approval of the engineers employed by the Town.
The sewer system in the part of town where the Kendrick residence was located was completed during August, 1954. The residence, however, was not connected to the system until five or six days preceding the explosion of January 27, 1955. After the explosion a damaged gas pipe was located some 500 or 600 feet from the Kendrick residence, from which the gas escaped and seeped into the sewer line leading to the Kendrick home. The evidence establishes this gas line was cut and severed in the process of the installation of the sewer system, in the construction of which it was necessary that ditches be dug, the sewer pipe laid and the ditches backfilled with dirt. This particular gas line was cut, never repaired, and left freely flowing gas and covered over with dirt in backfilling the ditch. There were numerous other instances where the gas lines were cut during the course of the aforesaid construction, some of which were not repaired at the time but were left open and covered with dirt in the backfilling operations, and were only discovered after the explosion in the Kendrick residence. The backfill in the ditches was of comparatively loose dirt, through which the gas could easily seep and find its way into the sewer lines. One other particular instance was where gas was detected by sight as it came out of the vent pipe to the bath in the residence of a Mr. Baker.
On the late afternoon preceding the date of the explosion, A. L. McDonald, a plumber, was called to the Kendrick home to adjust a leaking faucet in the kitchen. Plaintiff King accompanied McDonald. While in the Kendrick home their attention was directed to an unusual or foul odor in the bathroom. Both McDonald and plaintiff made an inspection, from which it was determined that the odor, thought to be sewer gas, was coming from underneath the commode, most probably due to its being improperly sealed. McDonald characterized this odor as "a pungent sewer smell". Plaintiff returned the next morning to replace the seal. In the performance of this task, King removed the commode and stuffed rags tightly in the opening to prevent odors escaping into the house. After installing a new seal and while he was replacing the commode, tightening the bolts holding it to the floor, there was a sudden yellow flash, an explosion, then a blue flame. The commode was burst in the explosion, the wall to the bathroom was blown down, the other walls and wall paper caught fire and plaintiff was dazed and knocked over to the floorafire, which was only extinguished by his rushing to the yard and rolling on the ground. After the house was completely consumed by flames, there continued a blue flame of burning natural gas as the gas escaped from the sewer connection. This flame was subsequently extinguished by employees of the Town. While plaintiff was making the aforesaid repairs, there were no fires or lights in the bathroom nor did he strike a match. There were, however, lights or fires in other sections of the residence.
*710 The facts disclosed by the record establish without cause for serious doubt that it was the explosion of natural gas (and its subsequent ignition), which found its way into the Kendrick home through seepage into the sewer lines from a severed unrepaired gas line, that caused the damage, and that the cutting and severance of this line was done by Mason and/or his employees, for whom he is responsible, during the course of the performance of his contract with the Town for the installation of the sewer system. That damage would likely result from such negligence could have reasonably been foreseen, and should have been foreseen, by Mason and his employees.
While denying liability, Mason contends that his contract with the municipality was performed in accordance with plans and specifications and under constant supervision and direction of the engineers employed by the Town; that the work, that is, the installation of the sewer system, was accepted by the Town of Jena and the accident occurred more than a month after such acceptance, and that thereby whatever liability existed on his part was shifted to and assumed by the municipality. In the alternative, he alleged that, if the accident occurred as claimed, it was due to contributory negligence of plaintiff and his employer in failing to take proper precautions against the ignition of gas, and that such negligence was the proximate cause of the injury. In the further alternative, Mason plead that, in the event he was found liable in any way, he was at all times protected under a policy of insurance with the United States Fidelity and Guaranty Company, and, consequently, in such event, prayed for judgment in his favor against his insurer.
The insurer's position is that the policy issued to Mason covered any liability arising out of an accident occurring during the progress of the work listed on the declarations, particularly during the progress of the work contracted for the installation of the Jena sewerage project, but that it did not cover any accident occurring after the completion of said work. In this connection, it was contended that such liability would have been covered had Mason procured insurance under the "Aggregate Products" provisions, which he did not do. Too, if the insured should be relieved of liability upon any of the grounds urged by him, there would be no liability on the part of the insurer.
Plaintiff contended that the municipality was negligent for its failure to cause to be made necessary inspections of the gas system to determine whether the gas lines had been cut and concealed by the contractor, and, further, in allowing residents to connect to said sewer system before it was finally completed. The Town denied any negligence on its part and plead contributory negligence on the part of plaintiff.
The record is convincing that the acts of Mason and/or his employees, in cutting and severing the gas lines, leaving them unrepaired, and permitting the gas to flow freely therefrom and covering them over in the backfill of the sewer ditches, constituted gross negligence and the proximate cause of the accident and the injuries and damages caused thereby. It is well known that natural gas by its nature seeks the line of least resistance in coming to the surface if an outlet is available, or, as in this case, by entering into a sewer line, in which it would naturally and normally flow upgrade and enter through sewer connections the houses connected with such system; that natural gas is highly explosive and dangerous, and that under such conditions an explosion might result as did occur. The Kendricks took the normal and prudent course of having their commode checked by a plumber after odors were discovered emanating therefrom. Both McDonald and King testified they used every precaution; that they had no knowledge that natural gas had entered the sewer lines or, in fact, that natural gas was escaping from its lines and accumulating in the sewer system. *711 There was no conduct upon their part such as would constitute an efficient intervening cause so as to absolve Mason from liability. There have not been established any facts that would justify a conclusion that King, his employer, McDonald, or Kendrick were guilty of any conduct constituting a proximate cause or a proximate contributing cause of the accident. From the evident promiscuous cutting of the gas lines, Mason should have been alert and taken extra precautions commensurate with the danger and inherent dangerous quality of escaping gas, the consequences of which, under the circumstances, could, and should, have been anticipated; however, the consequences attendant upon the injury to the gas line need not necessarily have been anticipated. For instance, "Restatement of the Law" under the subject of "Torts", § 435, says:
"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."
Mason relies principally upon the proposition that the acceptance by the municipality of the sewer system on December 14, 1954, prior to the explosion and demolition of the Kendrick home, when and where plaintiff sustained his aforesaid injuries, operates to absolve him from all liability. This contention is predicated upon the proposition that if plaintiff sustained injuries as alleged by reason of the breaking and severing of a gas line by the contractor, such injuries and damage resulted from the contractor's failure to properly carry out his contract. In this connection, he relies upon a rule of law cited in 14 R.C.L., § 42, reading as follows:
"The general rule is well established that an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result from the contractor's failure to properly carry out his contract."

The Court of Appeal for the First Circuit in Ortego v. Caldwell, 77 So.2d 151, and the Orleans Court of Appeal in Schott v. Ingargolia, 180 So. 462, 463, quoted with approval the aforesaid rule from Ruling Case Law. Judge McCaleb, now Associate Justice of the Supreme Court, in further quoting from the aforesaid authority in the latter case, stated:
"`When the work is finished by the contractor and accepted by the employer, the latter is substituted as the responsible party for existing defects, and the same rule is applied to subcontractors so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor. The reason for the substitution of liability is found in the general doctrine that an action for negligence will not lie unless the defendant was under some duty to the injured party at the time and place where the injury occurred which he has omitted to perform.' (Italics ours.)"
The Supreme Court, under writs of certiorari, reviewed the Ortego case and, based upon the facts, distinguished it from Schott v. Ingargolia, supra, and held a contractor liable for damages for the flooding of crops on lands adjacent to the highway repaired by him under contract with the Department of Highways, which contract included the construction of a levee to prevent such overflowing by water from highway ditches, notwithstanding the Department of Highways had accepted the contractor's work. 229 La. 907, 87 So.2d 124.
That the contractor and his surety are liable for damages resulting from the negligent act of the contractor is consistent *712 with the basic law of this State as contained in LSA-C.C. arts. 2315 and 2316, and any departure from the rules of liability therein prescribed would appear illogical and unsound. How could it be contended that a tort feasor is relieved from the consequences of his acts to a third person by any sort of an agreement between only the tort feasor and another third person under the plain language of these Codal provisions? The contention, under the facts of this case, is untenable.
We fail to find, however, as did the trial court, that the principle contended could have application in the instant case. No fault is charged to the sewer system per se; there is no evidence indicating that it was not a workable and efficient system; neither is there any indication before or after its acceptance the system was not in proper order and properly functioning.
According to the testimony of B. C. Jordan, a graduate and practicing civil engineer, any modern sewer system, under such circumstances as established herein, would collect and carry natural gas to the homes with which it was connected.
The tort committed by the contractor was a mere incident in the performance of his contract with the municipality. It was a mere incident so far as pertains to the installation of the sewer system. Such could have occurred as easily, and the result would have been the same, as well as the legal effect, had Mason been engaged in excavating for a private individual in the Town of Jena, say, for instance, in excavating for the location of a filling station and the burying of its fuel tanks underneath the surface, or, in fact, had he been excavating on his own account and on his own premises. As was clearly indicated in the Schott case, supra, the principle contended for by Mason finds application only in those instances where the injuries or damages result from some fault in the construction contracted to be made by the independent contractor, or from the contractor's failure to properly carry out his contract. As stated, no fault is shown in the construction of the sewer system or that it is not in order and is not properly functioning as an efficient system. Liability attaches to the defendant, Mason, on account of a tort committed by him or his agents causing damage to the gas distribution system and not in anywise to any fault or imperfection in the sewer system which he contracted to install. By the acceptance of the work under the contract, defendant Mason was not relieved nor absolved from liability for an independent tort committed by those for whose acts he is responsible. Neither by such acceptance did the municipality assume responsibility.
For identical reasons hereinabove recited that defendant Mason was not relieved of liability by the completion of the contract and the acceptance of the work by the municipality, the contention of the defendant, United States Fidelity and Guaranty Company, as to the applicability of the policy provisions pertaining to "Aggregate Products" or "Products Hazards" is inapposite. Neither the accident nor the injuries resulting therefrom were produced or brought about from the finished product, that is, the sewer system, but they resulted from a tort committed during the term of the policy, for which premiums were paid, and the conclusion is inescapable that the insurer is therefore liable.
The event upon which this action is predicated, that is, the cutting of the gas line and the explosion of the gas which had escaped therefrom, occurred during the term of the policy. Therefore, within such term, extending from April 28, 1954, to April 28, 1955, and within its limits of $50,000 for each person and $100,000 for each accident, the coverage designated "A. Bodily Injury Liability" applies. Under this provision the defendant, United States Fidelity and Guaranty Company, obligated itself "to pay on behalf of the Insured all sums which the Insured shall become legally *713 obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." Therefore, the insurer and its insured, Mason, are liable, in solido, to plaintiff for the injuries sustained by him. However, pursuant to the provisions of the policy, wherein the insured is condemned within the term and under the provisions of the policy, the insurer becomes directly obligated to him in the sum in which he is condemned. The insured is amply protected when the insurer is cast in solido with the insured.
We find no error in the judgment appealed relieving the Town of Jena of responsibility in the occurrence of the accident in which plaintiff was injured. It was neither a party to nor had any notice or knowledge of the tort committed by Mason and his employees. Neither, for the reasons hereinabove set forth, did its acceptance of the sewer system, a properly functioning finished product, render it liable in damages.
Lastly for consideration is the question of quantum. The plaintiff claims the award of $4,000 for personal injuries is inadequate, whereas defendants contend the amount is excessive. Following the accident, plaintiff was hospitalized for approximately 12 days, during which time and for several weeks thereafter he was treated by Dr. B. E. Doughty. On admission to the hospital the Doctor found plaintiff suffering with 1st, 2nd and 3rd degree burns about the face, neck, ears, both arms, and one or two places on his hip. The 3rd degree burns were on the back of his left hand. Plaintiff suffered intense pain and was given morphine, blood transfusions and glucose solutions while in the hospital. He became edematous, particularly in the face and about the eyes, as well as at the base of his neck. The swelling was so great as to close his eyes. A form of pressure dressing was applied during the treatment, which was very painful and required continued sedation in the form of codeine. Plaintiff suffered emotional shock and after recovery his face and hands were still tender, so that in sunshine and heat they turn red and become irritated.
At the trial, more than a year following the accident, the Doctor testified that plaintiff's skin was even then subject to easy trauma and there was a possibility that he would develop ulcers, particularly on his left hand. The burning of his hands, with 3rd degree burns on his left hand, together with a tenderness evidenced at the time of the trial and a likelihood of the development of ulcers, causes plaintiff to experience a handicap and considerable inconvenience since in his trade and occupation as a plumber he must be adept in the use of his hands with various tools. Plaintiff's eyebrows and lashes were burned, as was also the hair on his head. Burns as severe as afflicted plaintiff produce, without doubt, excruciating pain. We think the award for the physical injuries, pain and suffering sustained by plaintiff, in consideration of the probability of some considerable permanent effects therefrom, should be increased by the sum of $1,000. The trial court made an additional allowance of $400 for loss of wages during two months following the accident and for medical and hospital expenses in the sum of $253. We find no error in the allowance of these items.
For the reasons assigned, the judgment appealed is amended by increasing the award in plaintiff's favor to $5,653, and, as amended, is affirmed.
Amended and affirmed.

On Rehearing
A rehearing was granted herein for the purpose of a reconsideration of the two primary issues involved; first, the liability of Mason as contractor, and, second, the insurance coverage under the policy issued by the United States Fidelity & Guaranty Company.
*714 While we adhere to the basic reasons assigned in our original opinion, notwithstanding a painstaking study was made of every contention of error made by defendants, we desire to further discuss the principal contentions again urged by them.
Defendant Mason claims that the court particularly erred, first, in holding that his liability as contractor subsisted, notwithstanding the completion of the work undertaken by him under his contract with the Town of Jena, Louisiana, and its formal acceptance by the governing authority of the municipality, and, second, in failing to hold, as a matter of fact and of law (a) that the contract of insurance of April 28, 1954, between him and his insurer was ambiguous; and (b) that the said insurance contract covered completed operations. The defendant insurer joins its assured in urging the first of these contentions, but additionally claims that we erred in holding that the insurance coverage extended to accidents arising after the completion and acceptance of the work.
The defendants, in effect, contend that we reached our conclusions on the first of these propositions by disregarding the general rule that when a work has been finished by a contractor and accepted by the owner, the contractor is no longer liable to third persons for injuries sustained in accidents occurring after the completion of the work and its acceptance. That such is the rule generally prevailing in many jurisdictions admits of no dispute. We quoted this rule, in our original opinion, as recited in 14 R.C.L., p. 107, Title "Independent Contractor", Section 42, and which has been restated in 27 Am.Jur., p. 534, Title "Independent Contractor", Section 55, and in 65 C.J.S., Negligence, § 95b, p. 613. We are not unmindful that the Court of Appeal for the Parish of Orleans in Schott v. Ingargolia, 180 So. 462, and that the Court of Appeal for the First Circuit in Ortego v. Caldwell, 77 So.2d 151, followed the general rule, and that the Supreme Court recognized the general rule in principle in its review of the latter decision as reported in 229 La. 907, 87 So.2d 124.
However, the aforesaid treatises recognize there are exceptions to the general rule. For instance, after statement of the rule, R.C.L. continued:
"The general rule, however, is subject to some recognized limitations which continue the liability of the contractor even after he has parted with control over the work; as for instance, where the finished work is a nuisance, or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons."
A similar statement is contained in 27 Am.Jur., p. 535-536, Title "Independent Contractor", Section 56, but it is additionally stated:
"* * * a contractor may be liable where he turns over work which is inherently or intrinsically dangerous, or, in other words, where the work turned over in a manner so negligently defective as to be imminently dangerous to third persons."
The aforesaid Title and Section of C.J. S., in recognizing generally the non-liability of a contractor under circumstances prevailing here, qualifies the same with the statement:
"* * * at least if the defect is not hidden but readily observable on reasonable inspection."
Mason's contract for the installation of a sanitary sewer system contemplated that contract would, in all probability, be made with the natural gas mains and service lines owned by the town; provisions were made for the repair of any such lines as might be cut, damaged or severed in the progress of the work contracted to be done. It is common knowledge that natural gas is highly explosive and inherently dangerous, especially when *715 out from under control. It was out of control when the lines were severed and the damage thereto concealed in the backfill of the sewer ditches, permitting gas to flow freely, and, by taking a course of least resistance, to find its way into sewer lines and thence in the residences and other works or structures connected with and served by the system; it constituted a condition imminently dangerous to anyone using or having contract with the system. As convincing proof, the accident constituting the subject matter of this action is an eloquent witness.
Exceptions to the general rule have been recognized in many instances. Reference will be made to a few. In Holmes v. T. M. Strider & Co., 186 Miss. 380, 189 So. 518, 522, 123 A.L.R. 1190, an action for damages was predicated upon the fact that guardrails were defectively and insecurely installed on a highway bridge. A car in which plaintiff was a guest passenger struck the guard rail and, because it was insecurely fastened, and, therefore, on account of its defective condition, the car went overboard and plummeted 30 feet to the ground below. The Supreme Court of Mississippi held the contractor liable because the work was "turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons."
In Westinghouse Electric Elevator Co. v. Hatcher, 133 F.2d 109, the Circuit Court of Appeals for the Fifth Circuit, through Judge Dawkins as the organ of the court, held where the employer of an employee injured in an elevator operated by the employer, had contracted with a company to furnish inspection service for the elevator, the acceptance by the employer of the company's work would not terminate the company's liability for the negligence of its agent which caused the elevator to fall, where the act of negligence was of such a nature that it was not reasonably possible for the employer to have discovered it until after the elevator fell. The elevator had been in use for several years and it was the opinion of the experts testifying in the case that the breaking of the cables precipitating the fall was caused by crystallization from long use which should have been and could have been discovered but for the negligence of the company's agent.
In Colbert v. Holland Furnace Co., 333 Ill. 78, 164 N.E. 162, 164, 60 A.L.R. 353, the defendant had entered into a contract to install a hot water furnace in the Colbert home in Chicago. In making this installation it was necessary to cut away a small portion of the room floor in order to provide space for a cold air shaft. The grate over the shaft served as a floor for the space occupied, and, in the installation, it was not adequately supported, whereupon when plaintiff stepped on the grate it gave way and her leg slipped through, causing her to be seriously injured. In holding defendant liable in damages the court stated:
"This cold air grating, which was a part of the subject-matter of the contract between Colbert and plaintiff in error, was to be used for a particular purpose requiring security for the protection of human life, and it was therefore an exception to the general rule that no liability exists against a contractor of work in favor of one injured by a defect therein after the work has been turned over to and accepted by the owner. Empire Laundry Machinery Co. v. Brady, 164 Ill. 58, 45 N.E. 486. The law is presumed to furnish a remedy for every wrong. The defective condition was hidden from ordinary observation and was a latent defect of which the owner, who accepted the work, would not be chargeable with knowledge of its defective construction. We are of the opinion that the facts in this case bring it clearly within the exception to the rule * * *."
A continuation of the contractor's liability to third persons after completion *716 and acceptance of the work was likewise upheld in an Indiana case of Holland Furnace Co. v. Nauracaj, 105 Ind.App. 574, 14 N.E.2d 339, where a hot air furnace had been so negligently and defectively installed as to be imminently dangerous to third persons.
In Hale v. Depaoli, reported in 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R. 183, a contractor was held liable to a third person for damages suffered by reason of the condition of a porch railing negligently constructed after completion of the job and acceptance by the owner, since the nature of the thing was such that, if negligently made, it was reasonably certain to place life and limb in peril.
According to an editorial comment contained in 13 A.L.R.2d 233, the trend of judicial decisions has, as in the case of the liability of a manufacturer of articles for negligence to third persons, revealed a gradual limitation of the rule of non-liability of the construction contractor by the ingrafting of limitations or exceptions upon the rule. It was there stated that the notion that no duty, other than a contractual duty owing solely to the contractee, rests upon the contractor has been, at times, subjected to severe attack by the courts and has resulted in certain exceptions to the rule predicated on the imminency or inherency of the danger involved in the defective construction of the project, as well as the likelihood that it will result in injury to persons coming in contact therewith. This authority then stated:
"One of the exceptions to the rule of non-liability of the contractor is that if the thing constructed is inherently or imminently dangerous, or if the contractor's act results in an imminently dangerous situation the natural or probable consequence of which, or the inevitable result of which, would be injury to persons other than the contractee who after the acceptance of the work or structure by the contractor are likely to come in contact therewith, the liability of the contractor for the consequences of his negligent act is not limited to the contractee but extends as well to any third person (not a trespasser) who receives injury or damage as a direct result of such act."
The conclusion is, therefore, inescapable that, if the general rule of non-liability of a contractor for damages to third persons for injuries sustained after completion and acceptance of the work is to prevail in this State, this action comes clearly within exceptions to the general rule, and, accordingly, that the contractor is liable to plaintiff in damages for the injuries sustained by him because of the inherent danger of natural gas and the delivery of the sewer system to the municipality in such a defective condition as to be imminently dangerous to third persons.
We have predicated our conclusions upon the basis of the reasons assigned originally, as well as upon the proposition that this case comes within exceptions to the general rule of the non-liability of a contractor for injuries sustained in accidents occurring after completion of the work and its acceptance by the owner. However, if the general rule were before us as a matter of first impression in the appellate courts of this State, the consensus of opinion of this court is that the doctrine should be rejected as wholly inapplicable in this State. As we view the rule, it appears most inconsistent and out of harmony with the basic principles of our law of torts. For instance, to cite only two examples out of a possible many, LSA-C.C. Article 2315, provides that:
"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *"
*717 Article 2316 of the same authority provides:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
The obligations imposed by these articles are neither equivocal nor conditional. The obligation to repair the damage done by one, if he be a contractor, is not predicated upon a condition that the injury be inflicted or damage done before the work undertaken is completed by him or accepted by the owner. We have been cited no authority contrary to these articles of the Code. To sustain defendant's contention, in this regard, would be to give judicial recognition and sanction to a status of conditional liability, not only without statutory authority, but contrary to and in violation of positive laws appertaining to such actions.
Finally for consideration is the matter of insurance coverage. As the policy is not a statutory policy, the insurance liability is only such as is provided in the contract and in the endorsements attached thereto. Accordingly, the parties are at liberty to select the types of risks to be covered, the limits of liability and any other provisions not contrary to public policy.
Notwithstanding the general comprehensive coverage afforded during the term of one year specified in the policy, the insurer contends its liability does not extend to injuries sustained or damages inflicted after the performance of the contract and the acceptance of the work by the owner or contractee. The work performed in the instant case was accepted as complete by the Board of Aldermen as the governing authority of the municipality through a resolution adopted December 13, 1954. The explosion and fire in which plaintiff sustained injuries occurred January 27, 1955. This defense is based upon certain provisions, exclusions and exceptions provided in the policy and upon definitions defining those terms.
The policy provides that insurance is afforded only with respect to coverages as are indicated by specific premium charges in a table wherein the coverages, limits of liability and advance premiums are shown. Under coverage designated "A. Bodily Injury Liability", limits of liability are given for each person and for each accident, but no amount being specified for "Aggregate Products", a subdivision listed under the aforesaid general liability provision, but preceding those words are typed the words "Not Wanted". Neither was any premium specified for that designated liability. Also, attached to the policy was an endorsement wherein an agreement was recited that the policy did not apply to the "Products Hazard" as defined in the policy. This term is defined as follows:
"(f) Products Hazard. The term `products hazard' means
"(1) The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the Named Insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured or on premises for which the classification stated in Division (a) of the declarations or in the Company's manual excludes any part of the foregoing;
"(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the Insured, except (a) pickup and delivery, (b) the existence of tools, uninstalled equipment and abandoned *718 or unused materials and (c) operations for which the classification stated in Division (a) of the declarations or in the Company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement."
The first part of this definition is conceded to apply or refer to the warranty of goods or manufactured products, but it is argued that the second part of the definition has reference to contractors. We do not think the language of the contract and the endorsements and documents attached thereto warrant the conclusion urged as to this part of the definition; at least, the language used leaves the meaning vague, obscure and indefinite and it cannot be said, on this score, the policy is free from ambiguity.
We shall now endeavor to point up some of the reasons for the conclusion reached. In the first place, we have searched in vain for a definition of the term "Aggregate Products" Liability, which would appear to have been excluded on the face of the policy where the coverages are designated by inserting the amount of premiums therefor. We infer from counsel's approach of the matter that possibly "Aggregate Products" Liability and "Products Hazard" are one and the same thing. We find nothing in the policy or the endorsements thereon that would support this contention or justify such a conclusion.
Moreover, in the Schedule of Declarations attached to the policy, under section (d) "Products (Including Completed Operations)", upon which defendant insurer relies under the endorsement typed therein "Not Wanted", we find in the column headed "Premium Bases" the word "sales", and under the following column for "Rates" for coverages "A" and "B", which are, respectively, bodily injury and property damage liabilities provided in the policy, these words "Per $1,000 of Sales". That indicates, without serious room for doubt, the language refers to sales of products, goods, wares or merchandise as by a manufacturer or producer as the premiums are scheduled on the amount of sales.
The aforesaid section of the Schedule of Declarations contains the notation "See Endorsement C & L 928-B", the pertinent part of which reads as follows:
"It is agreed that the policy does not apply
"1. To the products hazard as defined in the policy;
"2. To a warranty of goods or products within the policy definition of the word `contract' if the accident occurs after the Insured has relinquished possession thereof to others and
"(a) away from premises owned, rented or controlled by the Insured, or
"(b) on such premises for which the classification stated in division (a) of the declarations or in the Company's manual excludes any part of such products hazard."
In all probability, from a fair interpretation of the exclusion just referred to, the endorsement pertains to and excludes injuries arising out of the handling or use of products, goods, wares, or merchandise sold or rented if the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured or on the premises for which the classification stated in Division (a) of the declaration excludes "any part of the foregoing", which could only mean the handling of goods or products of some kind.
The defendant Mason handled no products, meaning "goods or products" manufactured, sold or distributed. He, therefore, *719 did not want or need the coverage. The reference to the accident occurring after the operations have been completed and abandoned at or away from premises owned, rented or controlled by the insured means nothing more than the accidents occurring by reason of handling of products or goods, after any agreement to sell, rent or deliver the goods has been completed or the goods have been abandoned.
Nowhere does it appear that any of these exclusions or refers to contractors tractors who have had no products for sale but have performed a contract for the installation of a public utility or even the erection of any structure, public or private. We are confirmed in this conclusion by the type of exclusion used by this insurer and as formed the basis of its defense in the case entitled Smith v. United States Fidelity & Guaranty Co., 1942, 142 Neb. 321, 6 N.W.2d 81, where it was relieved of liability. The endorsement, so far as pertinent, read as follows:
"This policy shall not cover loss from liability for, or any suit based on, injuries or death: * * * (4) Caused by accidents occurring after the final completion of the work performed by the Assured at the place of occurrence of such accidents"
That was a completed operations exclusion appropriate where a work contract was involved. There was nothing vague or ambiguous about that clause. It was the duty of the defendant insurer to express clearly the limitation of its obligation. This we do not deem, under the evidence, it has done in the policy here involved.
A review of the rules for the interpretation of insurance contracts was made in Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, 113, wherein it was stated:
"An insurance policy is a contract under the law and the rules established by our LSA-Civil Code for the interpretation of agreements are applicable. See Article 1945 et seq. Accordingly, if the words of the policy are clear and express the intent of the parties, the agreement is to be enforced as written. LSA-Civil Code Articles 1901 and 1945. But, if there is any ambiguity or doubt, the court must endeavor to ascertain the common intention of the parties by reference to other phrases or words of the agreement or by other similar contracts of the parties, Articles 1948, 1949 and 1950, LSA-Civil Code, bearing in mind that, if a clause or word is susceptible of more than one interpretation, it is to be understood in the sense that would make the obligation effective, Article 1951, LSA-Civil Code, and, additionally that doubtful language is to be construed against him who has contracted the obligation. Article 1957, LSA-Civil Code. Our law, therefore, conformable with the universal rule applicable to contracts of insurance, is that all ambiguities must be construed in favor of the insured and against the insurer. See Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 and Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777."
See also Barnard v. Houston Fire & Cas. Ins. Co., 81 So.2d 132.
In final conclusion, if it could not be positively asserted, the exclusions in the policy and the endorsements attached thereto in the instant case were without reference to a contractor, then, of a certainty, they are vague and indefinite and ambiguous, and under the well settled jurisprudence must be construed against the insurer. Albritton v. Fireman's Fund Ins. Co., supra; Aschenbrenner v. U. S. Fidelity *720 & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460; First Nat. Bank of Kansas City, Mo. v. Hartford Fire Ins. Co., 95 U.S. 673, 24 L.Ed. 563.
The defendant insurer cites in support of its defense New Amsterdam Cas. Co. v. Ellzey, 5 Cir., 240 F.2d 618, which was by an insured to recover an amount expended in settlement of a personal injury claim arising out of the sale and installation of an electric window fan in the home of a Mrs. Katz. The fan itself was not defective but it was installed with the guard facing a back porch, leaving no guard or protection from the side facing or protruding into the bedroom. Later in the day, after the fan was installed, Mrs. Katz was injured severely when her hands came in contact with the blades of the fan. The accident occurred after the delivery and installation had been completed. Under an endorsement excluding "products hazard" liability, as defined in the policy in the language used in the instant case, recovery was denied by the Fifth Circuit Court of Appeal. The court held the endorsement applicable. The endorsement applied to the sale and handling of products, that is, goods, wares and merchandise under circumstances detailed in the definition of the term "products hazard" as given in the policy.
The authority cited is clearly inapplicable to the situation here. As pointed out heretofore, Mason handled no products. Such was the subject matter of the liability exclusion provisions of the policy, but since Mason was not engaged in such a business, but solely as a contractor, the provision had no application to him or his construction work.
Defendant Mason cited the case of Warner v. DeBritton, La.App., 151 So. 239, and complains of our failure to accord it consideration in our original opinion. The defendant DeBritton contracted to dig a canal which crossed a public highway. After the canal was dug, the policy jury began the construction of a bridge across it. It was evident that the incompleted bridge and not the canal constituted the obstruction in the highway, the duty of guarding which devolved upon the police jury. We find nothing there which would, in any way, alter the conclusions reached in this case.
For the reasons assigned our original decree is reinstated and made the final judgment of this court.
Judgment reinstated.