HARDY, Judge.
This suit was instituted by plaintiff for the recovery of the principal sum of $9,000, representing commissions paid a real estate broker and attorney’s fees incurred in the defense and settlement of suits by said realtor. Plaintiff’s claim is based upon the provisions of a “hold harmless” agreement which is hereinafter set forth in full. Named as defendants are Jack R. Ruben and Sam Wolff, the obligors under the said agreement. From judgment rejecting his demands plaintiff prosecutes this appeal.
The material facts, concerning which there is little, if any, dispute, are that plaintiff, as the owner of a 99.3-acre tract of land located in Caddo Parish, entered into a written contract during the month of December, 1954 with one Grover Weaver, a real estate broker, under the conditions of which agreement plaintiff granted the said Weaver the exclusive right, for a period of six months, to negotiate the sale of the said property at a price and on the terms therein fixed; Weaver procured and concluded negotiations for a sale of the property to Messrs. J. M. and A. C. Love, in evidence of which the said parties entered into a written contract of sale with Wimberly. By reason of disapproval of title to the property by the Love brothers’ attorney, the agreement of sale was formally cancelled. Despite the expiration of the term fixed in the written agreement which evidenced Weaver’s exclusive right of agency or brokerage, Wimberly verbally agreed to permit him to continue his efforts to sell the property and to pay a commission of 5% of the consideration for any such sale. On or about July 19, 1955 Weaver procured another bona fide purchaser for plaintiff’s property, one J. H. Yancey, who offered to pay a total consideration of $95,000, upon which Weaver’s commission would amount to the sum of $4,750. It appears that plaintiff agreed to enter into a written contract of sale with Yancey, provided he could not reach an agreement with certain other parties who had been interested by his attorney, Mr. C. B. Prothro, in the possible purchase of the property at a higher figure. Plaintiff’s said attorney delayed preparation of a written contract with Yancey, and on or about July 25, 1955, he procured an agreement from these defendants to purchase the property for a total consideration of $100,000. It is established that one or more conferences were held by and between Wimberly, his son, Roy, his attorney, Mr. Prothro, the defendant, Ruben, acting for himself and Wolff, and their attorney, Mr. Fred Simon. The established reason for these conferences was the fear on the part of Wimberly’s attorney that some claim might be made either by Love brothers or Yancey in connection with their prior negotiations, and, accordingly, Mr. Simon dictated the “hold harmless” agreement, which was signed by both plaintiff and defendants in this suit. It is also established that this agreement was confected and executed after the defendant, Ruben, had procured a verbal opinion from his attorney that an oral agreement to sell real estate was not binding and enforceable. Although the “hold harmless” agreement bears the date of July 20, 1955, it was actually prepared and signed on July 25th and predated, obviously for the purpose of giving it effect as of or about the date of the Yancey negotiations.
The above facts were all established in the suit of Grover Weaver v. Gibson Wim-berly, No. 123,682 on the docket of the First Judicial District Court of Caddo Parish, in which the said plaintiff prayed for recovery of his commission allegedly due in the principal sum of $4,750, the record of said suit being introduced and admitted in evidence and constituting a part of the record in the instant case. Judgment was rendered in favor of plaintiff, Weaver, and an appeal was taken to the Supreme Court by the defendant, Wimberly. Another suit was also instituted by the same plaintiff, Weaver, against Wimberly. A compromise and settlement of both suits was effected, under the terms of which Wimberly paid the plaintiff, Weaver, the sum of $5,500. As a consequence of this settlement, the appeal in the above entitled and numbered suit was dis *245 missed and the second suit between the same parties was dismissed, with prejudice, at the cost of plaintiff, Weaver.
The agreement upon which plaintiff bases his claim in the instant suit and seeks to recover the sum of $5,500 paid Weaver in settlement of the suits above described, together with the sum of $3,500 paid out as attorney’s fees in connection therewith, is fully set forth as follows:
“Shreveport, Louisiana
“July 20, 1955
“Gibson Wimberly
“Shreveport, Louisiana
“Dear Sir:
“We have this day entered into an agreement to purchase 99.3 acres of land in Caddo Parish from you.
“The Seller has heretofore entered into verbal negotiations for the sale of said property to others and the Seller requires of the Buyers that the Buyers hold him harmless from any loss, claim, obligation or liability to any persons who may claim to have prior or valid contract or agreement for the purchase of said property.
“The Buyers hereby bind and obligate themselves to protect and hold harmless Seller from any claim, loss, obligation or liability which might or could arise therefrom; Seller warrants, however, that no written contract for the sale of said property or authorizing others to sell the said property exists.
“Yours very truly,
“/s/ Jack R. Ruben
“/t/ Jack R. Ruben
“/s/ Sam Wolff
“A/ Sam Wolff
“Agreed to:
“/s/ Gibson Wimberly
“A/ Gibson Wimberly.”
Counsel for plaintiff urges error on the part of the trial court in its failure to construe the above indemnity agreement strictly against the defendants who caused the same to be prepared by their own attorney; in not resolving any ambiguity therein in favor of plaintiff, and in holding that the application of the agreement was intended solely with respect to claims of persons seeking to enforce agreements to purchase the property and not against claims for real estate commissions.
The contentions made on behalf of defendants are that the instrument is not ambiguous ; that it plainly constitutes an indemnification against claims of any persons asserting contracts or agreements for the purchase of the property prior to the sale to defendants and has no reference, either by specific language or intent of the parties, to protection against claims for real estate commissions.
We find no difference of opinion, and, accordingly, no issue between the parties as to the principles of law which are involved. Plaintiff relies upon the well-established rules of construction of contracts that in doubtful cases the effect of an agreement must be interpreted against him who has contracted the obligation, citing LSA-C.C. Article 1957; King v. Mason, La.App., 95 So.2d 705, and Bruno v. McCabe, La.App., 71 So.2d 245, and numerous cases cited therein.
Defendant supports his position by reference to LSA-C.C. Articles 1951 et seq., and particularly the provision of Article 1956 which reads:
“When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.”
It is obvious that the determination of this appeal must rest upon the interpretation of the agreement which is the basi-i of plaintiff’s action.
*246 Examination of the agreement discloses that it was required by the plaintiff, Wim-berly, to protect him against “ * * * any loss, claim, obligation or liability to any persons who may claim to have prior or valid contract or agreement for the purchase of said property.” The following paragraph constitutes and delineates the obligation of the buyers which fulfills the above requirement made by the seller in connection with the negotiation of the sale and purchase of the property. But it is vigorously urged in support of plaintiff’s position that the intent and purpose of the agreement was extended to include, in addition to agreements with respect to the sale and purchase of the property, claims for real estate commissions. In support of this point counsel argues that the last sentence of the agreement cannot be ignored and rendered nugatory. We repeat the sentence in question, which reads:
“Seller warrants, however, that no written contract for the sale of said property or authorizing others to sell the said property exists.”
It is contended that, because no written contracts of sale continued in existence, the restriction of agreement to this specific purpose would render the same unnecessary, futile and nugatory, and, as a consequence, the agreement must be construed as affording protection against claims for real estate commissions.
We perceive no merit in this contention. Conceding the truth of the representation that no written contracts of sale existed, this, in itself, would not have prevented the attempt on the part of either Love brothers or Yancey to enforce an agreement, which attempt would have constituted, under the specific wording of the agreement, a “claim” which “could” have caused loss to the seller.
It must also be noted that while plaintiff’s representation in the agreement to the effect that no written contract authorizing others to sell the said property existed, he well knew and did not disclose to these defendants the existence of a verbal agreement with Weaver, the real estate broker, which continued, in effect and unrevoked, the provisions of a prior written agreement.
It is also relevant to observe that the learned district judge, who rendered a written opinion in the instant case, was also the judge who tried, and, responsive to a detailed written opinion, rendered judgment in favor of Weaver in his suit for recovery of his real estate brokerage commission, and was therefore familiar with all of the evidence developed on trial of both suits.
Because it correctly sets forth the pertinent facts and correct conclusion with reference to the interpretation of the “hold harmless” agreement, we quote the following excerpt from the opinion of the district judge:
“Yancey has made no claim under the verbal contract to purchase the property, and it was against him the letter of guaranty was given. According to the evidence, no mention was made of the real estate broker or his rights under a verbal contract to sell. Therefore, we conclude from the evidence that the letter of guaranty herein sued upon was given to Wimberly to protect him against and claim or demand which may have been made by Mr. Yancey, or any other person who might claim ‘to have prior or valid contract or agreement for the purchase of said property.’ No contention has been made that Grover Weaver, the broker, claimed to have any contract to purchase plaintiff’s property. He did have a claim against Wimberly for a broker’s commission on the two transactions wherein he procured Love Bros, and J. H. Yancey as purchasers able and willing to buy the property, and for which Weaver sued Wimberly and recovered judgment. Wimberly owed Weaver this commission whether Weaver sold the property to Yancey or to Ruben. We do not think that the parties had in mind a real estate *247 broker making a claim for commissions; the letter of guaranty applied solely against claims of persons who claimed to have purchased the property.”
It is our opinion that the interpretation of the instrument which constitutes the crux of this litigation, as above set forth, is correct under the facts established.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.