HARDY, Judge.
This is a suit by plaintiffs, husband and wife, for the recovery of damages resulting from personal injuries sustained by the wife in an automobile collision. The case was tried before a jury which returned a verdict in favor of plaintiff husband' in the sum of $1,424, and in favor of the plaintiff wife in the sum of $15,000. There was judgment in accordance with the verdict, from which judgment the defendants have appealed.
*49 The accident occurred at or near 4:30 p. m. on April 8, 1958, on U. S. Highway-165 between the towns of Olla and Urania in La Salle Parish. Plaintiff was driving a 1953 Pontiac Sedan north on the highway at a speed variously estimated as between 30 to 40 miles per hour. Following the Thornton car was a large tractor-van trailer unit, 44 feet in over-all length, owned by the defendant, F. Strauss & Son, driven by its employee, Robert Square, and insured by the defendant, New Amsterdam Casualty Company. The sideswiping collision occurred as the Strauss truck overtook and was engaged in passing the Thornton automobile.'
At the point of the collision the highway was straight and visibility unimpaired for a considerable distance in each direction.
Plaintiffs’ original petition alleged as the cause of the accident that the driver of the Strauss truck “ — caused said truck to swerve or turn across the center stripe of the highway into the space then being properly occupied by the Thornton automobile — .” By a supplemental and amended petition plaintiffs alternatively alleged that the accident occurred either in the manner set forth in its original petition as above noted, or by reason of the fact that the driver of the Strauss truck did not pull his vehicle sufficiently far to the left of the highway to clear the Thornton car in passing, and certain portions of the truck body collided with plaintiff’s car and caused the wreck.
The record discloses an irreconcilable conflict between the testimony of the witnesses for the respective parties litigant. The only eyewitnesses to the collision were the plaintiff, Mrs. Thornton, and the Negro, Robert Square, driver of the Strauss truck. Mrs. Thornton testified that she kept the Strauss truck under observation, as it followed her car some distance on the highway, by glances in her rear view mirror; that the truck waited until both approaching and following traffic had passed and then began the passing operation. As to the occurrence of the actual impact, Mrs. Thornton testified:
“And in place of his pulling on down the road out yonder past me, he just got up about even of his cab part, I’d call it, even of my front of the car and just whipped right back into it and just — after he hit me, now I don’t know what else happened.”
Again on cross-examination Mrs. Thornton testified:
“His motor part — his cab part of the truck, must have been about even of my side of the car where I was driving, on my left-hand side. And in place of his pulling on up the road far enough to go by me and then pull back in on the right, he just pulled into me.”
The story of Robert Square, driver of the Strauss truck, as to the occurrence of the accident, was given in narrative form in the course of his testimony as follows:
“Well, I was traveling north on 165. I came past this side of where you turn to go to Urania, well, I came up on this car and a pickup truck. I was traveling about forty or forty-five miles an hour when I came up on them. Well, I seen I was gaining and so I cut my speed, so I pulled on up there I reckon, about sixty feet to give me plenty of space, usually I use my own judgment, which is a regulation. Then I seen they was still keeping the same speed, so I checked my rear-view signal to see was there anything coming, well then I put my blinkers on and pulled out in the passing lane. And as I pulled out there, then this pickup truck pulled out in front of me. Then I pulled back over in the right lane until he had gone on out of the picture, or gone up ahead further. Then I traveled a few feet, I don’t know just how far, further, and then this car *50 still had the same speed, so I checked my mirror again and wasn’t anything coming, I checked ahead of me and wasn’t anything coming, so I put my blinkers on again. Then I pulls and another method I use, as an old truck driver taught me, I always in daytime hold the shoulder of the road as close as I possibly can in'passing, even after I pass I always give another fellow that be behind me a view that he can see if anything’s coming if he wants to pass.”
* * * * * *
“And then, as I was attempting to pass, I checked my mirror and I saw this car kind of creeping in, I taken off to the shoulder which I was almost on the shoulder, I taken the shoulder of the road, put my left wheels over on the shoulder of the road, and I taken a quick glance again, and it was still coming in on me, and I just went on off of the road, and at the time there was a little gravel road comes in there, and when I hit this gravel road that’s where the impact hit, that’s where we met at, and as I crossed over the gravel road, my trailer careened, and I knew it was going to turn over if I’d kept going because the embankment was getting steep, so I just cut it sharp back to the right and went back on top of the highway and stopped, which I was across the highway, right across it. And so, as I stopped, then I realized I had the highway blocked, and I looked back and I seen that the car was back over on the far side when I looked at my rear-view mirror, went over there, so to keep from congesting the traffic, I just pulled my truck on off of the highway, clean over on the right, and down, so the traffic could pass if anybody wanted to get by. And at that particular time, another truck had pulled up, just as I was pulling, getting my truck off of the highway. So I jumped out of my truck and I run back there. Me and this other driver got there about the same time, and so this lady was there in the car.”
In support of their version of the accident plaintiffs adduced the testimony of one R. C. McGuffee, a Corporal in the State Department of Police, who made an investigation of the accident shortly after its occurrence. Careful examination of the testimony of this witness discloses that he was absolutely positive as to only one material physical fact, namely, that he found all the debris resulting from the collision of the two vehicles, consisting of “ — dirt and glass and material on the right-hand side of the highway headed north,”- — -“close to the center line.” This witness further testified that following the collision the Thornton car came to a stop on the west shoulder of the highway approximately forty feet north of the side road, and that there were no tire marks of the Strauss truck on the left or west shoulder of the highway. This latter point of the Trooper’s testimony was squarely controverted by testimony of one B. Z. Smith, who was driving a truck trailer unit south on Highway 165 approaching the point of the collision at the time of its occurrence. This witness testified that he saw the Strauss truck leave the highway and travel on the west shoulder, from which position it was turned back into the highway, brought to a stop in such a position that it blocked the highway, whereupon it was moved by the driver, Square, to a safe position off the east side of the highway. Smith’s view of the actual collision was obscured by the dust which was raised by the truck as it went onto the shoulder of the highway, and, therefore, he could not testify as the exact point at which the impact occurred.
Photographs of the vehicles involved showed that the entire left side of the Thornton car, from the front bumper to a point behind the rear door, was crushed; photographs of the Strauss truck show the only serious damage to have been the tearing away of an iron step or tire mount which was located immediately below the *51 side door of the van type trailer at or slightly forward of the center of the right side. The only other physical damage to the Strauss unit appeared to he some inconsiderable scratches along the door immediately above the location of the iron fixture.
The above described damages to the vehicles conclusively indicate the sideswiping nature of the collision, and, as a result, we are confronted with the resolution of a purely factual question as to which driver was guilty of the fault or negligence which was the proximate cause of the accident.
In beginning the consideration of this issue, it is appropriate to observe that the plaintiffs bear the burden of proving, by a preponderance of the evidence, the negligence of defendant’s driver. Even if the testimony of the four witnesses above named should be accepted with complete credence, we seriously question whether it could be fully resolved that plaintiffs had sustained and discharged the burden of proof. However, we do not feel that the testimony of plaintiffs’ witness, McGuffee, can be accorded any substantial weight. His assertion that all of the debris was found on the right side of the highway is completely incredible in consideration of the badly crushed and battered left side of the Thornton car, and the fact that it continued across the west side of the highway and out upon the shoulder before it came to a stop. Additionally, it must be noted that the Trooper’s testimony was grossly in error as to the absence of tire marks of the truck upon the west shoulder of the highway at the north of the road intersecting from the west. The existence of this evidence is attested not only by the testimony of both Square and Smith, but by photographs taken some ten days following the accident and introduced in evidence on behalf of defendants.
We think Mrs. Thornton was entirely correct in her testimony that she knew nothing about the occurrence of the actual impact, but it is inconceivable that her explanation, which was purely a conclusion, could be correct. If, as Mrs. Thornton testified, the driver of the Strauss truck turned his vehicle into the side of her car at a time when the cab of his unit was approximately even with her driving position, the physical evidences of damage would be completely at variance with those which are established by the record.
Corporal McGuffee testified that Sgt. Steen of the State Police came to the scene of the accident, and Robert Square testified that two State Troopers arrived first; later, another trooper came up, and, about the same time, that the “Sheriff from Columbia”, driving south on the highway, appeared at the scene of the accident. It is difficult for the court to understand why none of these witnesses, who were experienced peace officers and, therefore, could have given enlightening testimony as to the physical circumstances surrounding the accident, were produced on trial of this case.
After thorough consideration we can only conclude, first, that plaintiffs have failed to establish the negligence of the driver of the Strauss truck as the proximate cause of the accident by anything approaching a preponderance of the evidence; and, second, that the evidence tendered on behalf of defendants definitely preponderates in establishing the conclusion that the proximate cause of the accident was the action of Mrs. Thornton in turning into the side of the passing truck.
It follows that we must find manifest error in the verdict of the jury and the judgment in accordance therewith, and, accordingly,
It Is Now Ordered, Adjudged and Decreed that the judgment appealed from be, and it is hereby, annulled, set aside and reversed, and there is now judgment in favor of defendants-appellants rejecting the demands of plaintiffs-appellees, at their cost.