124 So.2d 168 (1960)
Mrs. Sylvia Cooper SUMRALL, Individually and as Natural Tutrix, Plaintiff-Appellant-Appellee,
v.
AETNA CASUALTY AND SURETY COMPANY et al., Defendants-Appellants-Appellees.
No. 9297.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1960.
Rehearing Denied December 1, 1960.
Certiorari Denied January 9, 1961.
*171 Wellborn Jack, Shreveport, for Mrs. Sylvia Cooper Sumrall.
Mayer & Smith, Shreveport, for St. Paul Mercury Indemnity Co.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Aetna Casualty & Surety Co. et al.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Campbell Construction Co., Inc., and Indemnity Ins. Co. of No. Amer.
Bodenheimer, Looney & Richie, Shreveport, for Austin Contr. Co. and Superior Ins. Co.
AYRES, Judge.
Plaintiff, in her individual capacity and as natural tutrix of her three minor children, issue of her marriage with Alvern C. Sumrall, seeks to recover damages occasioned by his accidental death.
The accident occurred when a 1954 Model Pontiac automobile proceeding in a northerly direction, driven by L. J. Sumrall, in which Alvern C. Sumrall was riding, left the main-traveled portion of a highway and crashed into the rear of a water truck parked on the right shoulder. Alvern C. Sumrall was instantly killed.
The scene of the accident is about one-half mile south of Caspiana on State Highway 1, then undergoing extensive improvement. This improvement consisted primarily of widening the highway to a width of approximately 22 feet and resurfacing with asphalt. The surfacing had been completed, leaving the shoulder work to be done. The shoulders, as then existed, "dropped" some four-and-one-half to eight inches below the highway surface, particularly on the right-hand side at this point. The roadway was level and straight and, at the time of the accident, about 1:00 p.m. June 6, 1957, there were no unusual atmospheric conditions or obstructions to one's view.
The aforesaid general reconstruction of the highway was under contract by Campbell Construction Company, Inc., which subcontracted the surfacing to Austin Contracting *172 Company. After completing its work on this segment of the project, the latter left parked, on the east shoulder of the highway, the aforesaid water truck, headed north.
Made defendants, in addition to L. J. Sumrall, were (1) St. Paul Mercury Indemnity Company (and St. Paul Fire and Marine Insurance Company, with which it was alleged to have merged), the insurer of the aforesaid Pontiac automobile involved in the accident, with a liability coverage limited to $5,000 for the death or injury to any one person in an accident; (2) The Aetna Casualty and Surety Company, the liability insurer of a Chevrolet truck personally owned by L. J. Sumrall, with a $50,000 limit of liability as excess insurance for the injuries or death of any one person in an accident; (3) Campbell Construction Company, Inc., and its liability insurer, Indemnity Insurance Company of North America; and (4) Austin Contracting Company and its liability insurer, Superior Insurance Company.
After first invoking the doctrine of res ipsa loquitur, plaintiff, in the alternative, charged L. J. Sumrall with negligence constituting a proximate cause of the accident, in his failure to keep a proper lookout or to maintain control of his car by slowing down or stopping before striking the water truck, and in driving at an excessive rate of speed. Negligence was charged to Campbell Construction Company, Inc., and Austin Contracting Company in the manner of parking the water truck so as to constitute a "trap" in violation of the provisions of LSA-R.S. 32:241, and in their failure to post or maintain adequate signs that the highway was under construction.
The answer of L. J. Sumrall was a specific denial of the several allegations of plaintiff's petition, as was that of the insurer, St. Paul Mercury Indemnity Company, which tendered the additional defense that its policy afforded no coverage for the loss sustained in the aforesaid accident because of the exclusion of liability in cases properly coming under the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq.
Campbell Construction Company, Inc., and Austin Contracting Company denied any negligence on their part, or on the part of anyone for whom they were answerable, in connection with the parking of the water truck, as did their sureties who joined their principals in charging that the negligence of L. J. Sumrall, in the particulars alleged by plaintiff, and in driving while fatigued, and without heeding the posted warning signs that the highway was under construction, constituted the sole and proximate cause of the accident. Contributory negligence in the aforesaid particulars was also directed by these defendants to Alvern C. Sumrall, to whom the negligence of L. J. Sumrall was allegedly imputable, because of their alleged engagement, at the time of the accident, in a joint adventure. In addition, contributory negligence was charged to the deceased in riding in a vehicle, knowing the driver to be fatigued, and at an excessive speed, without warning or protest, and without his having warned the driver of the danger incident to the difference in elevation of the surface of the road and shoulders.
The Aetna Casualty and Surety Company, in addition to the defenses urged by Campbell, Austin, and their sureties, tendered the further defense that its policy afforded no coverage, at the time of the aforesaid accident, to L. J. Sumrall in that coverage did not extend to an automobile furnished for the named insured's regular use.
By its pleadings, St. Paul Fire and Marine Insurance Company denied it was a proper party defendant because it had no contractual relationship with any of the parties litigant. This contention was sustained.
After trial by jury, a verdict was rendered in favor of plaintiff, individually, for $10,000, and in her favor, as natural tutrix of the minors, for $40,000 against L. J. *173 Sumrall, St. Paul Mercury Indemnity Company and The Aetna Casualty and Surety Company, in solido, subject, however, to the aforesaid limits of the contractual obligations of the sureties. From a judgment in accordance with the verdict, the defendants cast, suspensively appealed. Plaintiff appealed devolutively from that portion of the judgment rejecting her demands as against the other defendants and, by answer to the appeal perfected by the other appellants, prayed that the awards be increased.
Material to the issues presented for decision are certain facts concerning which a statement, more or less, in detail, is deemed in order. Sumrall Construction Company, organized in October, 1954, was a partnership, composed of John O. L. Sumrall and his two sons, Alvern C. Sumrall and L. J. Sumrall, each of whom owned a one-third interest. This partnership was engaged in a general construction business. The partnership, as such, does not appear to have owned any automobiles or other motor vehicles. However, John O. L. Sumrall owned a 1953 Model Pontiac and a Chevrolet automobile, the use of which was available for partnership business. Alvern C. Sumrall owned no vehicle of his own, but L. J. Sumrall owned a 1954 Model three-quarter ton Chevrolet pickup truck. John O. L. Sumrall also owned a 1954 Model Pontiac automobile which was provided for the use of and referred to as Mrs. Sumrall's car.
The accident, fatal to Alvern C. Sumrall, occurred while he and L. J. Sumrall were returning from a mission of the partnership. They had gone to Jena, Louisiana, to submit a bid on a project on behalf of the partnership. To make this trip, permission was obtained from Mrs. Sumrall to use her car because the other Pontiac was in use and there existed some mechanical defect in the Chevrolet. On leaving their father's residence about 5:30 a.m., Alvern C. Sumrall occupied the driver's seat until they reached Clarence, where, after stopping for coffee and making a telephone call, the journey was resumed with L. J. Sumrall as driver. After reaching Jena and after having transacted the business for which they made the trip, and, after having submitted and filed a bid with the Parish School Board for the work proposed, their return trip was begun with L. J. Sumrall continuing as driver. After again passing Clarence, no other stop was made until the accident occurred.
The record leaves little, if any, cause for doubt that L. J. Sumrall was familiar with the highway in the vicinity of the accident and that it was under construction. He had, within the previous week or two, made two round trips over this highway to Natchitoches, as well as the trip to Jena earlier in the day, and, admittedly, on the latter occasion, he saw the water truck parked on the side of the highway as well as certain warning signs in the vicinity.
There were no eyewitnesses to the accident other than the deceased and the driver, and the driver claimed, because of a blow to his head, he suffered lapse of memory or a retrograde amnesia and was unable to recall to memory the facts as to the occurrence of the accident.
Of primary importance is a determination of the question presented as to the fault or negligence of L. J. Sumrall. The defendants-appellants and appellees contend (1) that the doctrine of res ipsa loquitur is inapplicable and (2) that plaintiff has failed to establish negligence on the part of the driver of the automobile by a preponderance of evidence and to a legal certainty as required by law.
Cited in support of the first of these contentions is the case of Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389. While that case may be distinguishable upon a factual basis from the instant case, a determination of the point raised is not essential to a decision of this case. Therefore, a discussion of the point will be entirely pretermitted.
*174 Before giving consideration to the second of the points advanced, it may be appropriate to observe that negligence is an affirmative fact that must be proved by the party who alleges it. Therefore, in an action in tort, the burden of proof rests upon the plaintiff. Dunn v. Tedesco, 235 La. 679, 105 So.2d 264; Harris v. Tremont Lumber Co., 115 La. 973, 40 So. 374; Thornton v. F. Strauss & Son, Inc., La. App.1959, 113 So.2d 48.
While it is true defendant Sumrall gave, in his testimony, little information or explanation as to the occurrence of the accident, certain physical facts, nevertheless, were established warranting serious consideration. Physical facts, according to the testimony of a photographer, who reached the scene soon after the accident, showed that the Sumrall car left the main-traveled portion of the highway and "dropped" to the shoulder some 40 feet before striking the water truck. By force of the impact, according to the testimony of the investigating officer, the parked truck, weighing more than 23,000 pounds, including its contents, as estimated by its owner's representative, was knocked a distance of nine feet over a wet, muddy dirt shoulder. The Pontiac automobile, although practically demolished, continued 12 feet beyond the point of impact.
Defendant Sumrall admittedly signed three written statements relating to the accident and these were filed in evidence. In the first of these, dated June 10, 1957, Sumrall stated he had no remembrance of events transpiring after he crossed a railroad spur track leading to a cotton gin some mile-and-a-half from the scene of the accident; nor did he remember there was a dropoff from the surface to the shoulder of the road on his side of the highway; nor did he remember seeing a water truck or remember striking it. He recalled, however, that his brother was nodding and was perhaps asleep prior to the accident. In a second statement dated June 11, 1957, Sumrall reiterated an alleged lapse of memory after crossing the railroad track, and disclaimed any knowledge as to what happened, contending, as he formerly did, that he only momentarily recovered consciousness as he was being carried by ambulance to a hospital. He claims to have been informed of the accident after fully regaining consciousness in the hospital where he remained, however, for only two days. In one statement, he claims he was driving 60 miles per hour and, in the other, 60 to 70 miles per hour. In the latter of these first two statements, he recalled he was near Caspiana at about 1:00 p.m.; in the first of the statements, he said no traffic was observed approaching from either direction before the accident.
The third statement, undated, was shown to have been made by Sumrall about two weeks following the accident, after he had resumed work in connection with a project at the South Highlands Elementary School. This statement reads as follows:
"I, L. J. Sumrall, am 26 years old, married and have 3 children and I live at 8107 Dowdell, Shreveport, Louisiana. I am self employed being one of the partners in the Sumrall Construction Company. I was riding in the car with my brother A. C. Sumrall on June 6, 1957 at about 1:00 P.M. when we were involved in an accident. This accident occurred on Highway #1 about ½ mile south of Caspiana. I was driving and was headed north on Highway #1 in my fathers car which was a 1954 Pontiac. I was driving about 60 M.P.H. when my right front wheels of my car dropped off on the low shoulder of the road and I lost control of the car, continued down the shoulder and ran into a parked truck that was parked headed north on the east shoulder off the new blacktop on the shoulder. The truck was parked with the front end completely off the road and shoulder and the rear end off the new blacktop on the shoulder about *175 2 feet from the new blacktop. The road at this place is new two lane blacktop and there is about 4 inch drop from the road surface of the shoulder and when my right wheels dropped off the 4 inch drop I lost control of my" (car) "and this was about 50 feet south of where the truck was parked. There was no one in the truck at the time of the accident. I had my brother in the car with me and he" (was) "killed instantly. I had two cuts on my head and 2 fractured ribs. I do not know what caused me to drop off the shoulder. I had been to Jena and left there about 11:00 A.M. that morning and I had been driving all the way. I had not been drinking and I was wideawake at the time of the accident. The accident occurred on a clear fair day and the road surface was dry. The road was straight and level. I recall seeing the truck before I hit it but it all happened so fast I just do not remember how far the rear of the truck was from the road surface. At the time of impact the right front of my car was still off on the low shoulder and and" (sic) "the right front of my car hit the truck in left rear. My brother, A. C. Sumrall, was married had three children and was employed as a partner in our company which is owned entirely by myself, my father and my brother all equal partners, and share the profits equally. Last year we made $45,000.00 to $50,000.00 and we split this three ways. We spent the night of June 5th and 6th at home in Shreveport, left Shreveport at 5:00 A.M. and drove to Jena and bid on a job there and left there about 11:00 A.M. on our way home and the accident occurred about 1:00 P.M. When my right front dropped off on the low shoulder, I do not recall if I applied my brakes or not all I know is that I lost control of the car. There were no witnesses to the accident. I was treated by Dr. George Garrett of Shreveport, and was in the hospital 2 days and then released. I lost 2 weeks from work because of the accident and I am still under the doctors care and not completely recovered. I have read the above and it is true and correct." (Signed) L. J. Sumrall (Emphasis and words in parentheses supplied.)
Sumrall's explanation for his statements of facts, contained in these documents, is most unconvincing. He testified, in effect, that the documents contained only a recital of such facts as he had been told existed and, as to what the facts actually were, he had no knowledge or recollection, not even as to the occurrence of the accident. In the first two statements, he refers to his rate of speed and, in the second, the condition of traffic on the highway at the time of and immediately preceding the accident. These, as well as others, were facts unknown to others and only known to him. The third statement, Sumrall testified, was given in a question-and-answer form but narrated and typed as the conversation continued, after which he read and signed it. This statement contains considerable details, not only relating to the accident itself but to numerous other facts, the existence of which is independently established. No indication can be gleaned from this document that Sumrall was reciting facts other than from his own knowledge. Immediately above his signature appears this statement:
"I have read the above and it is true and correct."
No contention is made that at the time he gave and signed the aforesaid statement he was not in full possession and control of all his mental faculties. The opposite is obviously true. He was engaged on a school construction project supervising a number of employees.
In reaching its verdict, the jury obviously found that L. J. Sumrall was guilty of negligence constituting a proximate *176 cause of the accident. In giving consideration to that question, the jury had before it not only Sumrall's testimony but also his three statements, as well as other testimony and evidence as to the physical facts. In approving the jury's findings as to Sumrall's negligence, the trial judge stated, in an opinion denying motions for a new trial,
"The jury had the right to choose between these two statements, one of which is proof of negligence and the other is not, and if we would be considering the case we would have done as the jury did, and believed the written statement of defendant as to how the accident really occurred."
Not only do we fail to find manifest error in the conclusions reached by the jury and approved by the trial court but, from our own independent review of the record, we, likewise, conclude that the jury's findings are correct.
Attention will next be directed to plaintiff's charges of negligence against Austin Contracting Company and Campbell Construction Company, Inc. These charges relate primarily to the fact and manner of the parking of the water truck. The distance intervening between it and the edge of the pavement is not definitely established. Estimates of the distance vary from 16 to 18 inches to as much as 8 feet or more. No witness, however, placed the truck on the main-traveled portion of the highway. Therefore, the provisions of the Highway Regulatory Act, LSA-R.S. 32:241, prohibiting the parking of vehicles upon the main-traveled portion of a highway outside a business or residential area, have no application. It may be pointed out, also, that the vehicle, as parked, did not serve to obstruct the view of motorists as the highway was level and straight for a considerable distance. Nor could it be said that, even if it be conceded appropriate warning signs were not posted, such failure constituted a proximate cause of the accident. Admittedly, Sumrall had full knowledge of all the facts pertaining to the highway construction, the completion of the surfacing, and the existence of the low shoulders. Posting of additional signs would not have given him more information than he already had.
"Proximate cause" is generally defined as any cause which is natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred; and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable consequence. 65 C.J.S. Negligence § 103, p. 645.
The acts of these defendants-appellees, at the most, could only have constituted a remote or inefficient cause of the accident, while the acts of defendant Sumrall, the direct and proximate cause.
Neither do we find any merit in the position taken by The Aetna Casualty and Surety Company and St. Paul Mercury Indemnity Company that their policies afforded no coverage in the instant case because of the exclusions pertaining to cases probably coming under the Workmen's Compensation Statute. The individual partners of the Sumrall Construction Company, including the deceased, Alvern C. Sumrall, complied with the provisions of the statute and elected not to come under such provisions. Therefore, this is not such a case as is excluded from coverage by the provisions of the aforesaid policies relating to workmen's compensation cases.
The further defense is made by The Aetna Casualty and Surety Company that the negligence of L. J. Sumrall, as the driver of the automobile, is imputable to Alvern C. Sumrall because they were engaged *177 in a joint adventure with equal right to control the operation of the car in which they were riding. Cited in support of this proposition are the cases of Lawrason v. Richard, 172 La. 696, 135 So. 29; Hawkins v. Travelers Indemnity Co., La.App.1954, 73 So.2d 348; Tannehill v. Kansas City, C. & S. Ry. Co., 279 Mo. 158, 213 S.W. 818; Williams v. Barton, La.App.1955, 81 So.2d 22.
The Lawrason case does not support the position taken. Rather, the case supports the position of the plaintiff. The court observed there is no joint adventure in the sense that an occupant of an automobile is equally liable with the driver unless there is also equal right to control the operation of the vehicle. Justice St. Paul, as the author of the opinion, stated [172 La. 696, 135 So. 31]:

"Moreover, the doctrine of joint liability because of joint adventure has no application between the parties but only as concerns third parties, the theory of joint liability being based on supposed agency. And there can be no doubt that a negligent agent is liable to his principal unless the latter be also at fault. Cf. Bushnell v. Bushnell, 103 Conn. 583, 131 A. 432, 44 A.L.R. 785; Collins v. Anderson, 37 Wyo. 275, 260 P. 1089; Wilmes v. Fournier, 111 Misc. Rep. 9, 180 N.Y.S. 860." (Emphasis supplied.)
The rule is likewise stated in 65 C.J.S. Negligence § 158, p. 799, as follows:
"Although there is some authority to the contrary, the doctrine of joint enterprise is peculiar to contributory negligence and has no application to actions brought by one joint adventurer against another to recover for injuries due to the latter's negligence." (Emphasis supplied.)
The Hawkins case has no application. There, a third person claiming damages sued not only the driver of an offending vehicle but a passenger therein on the theory that the driver and passenger were engaged in a joint adventure. It was held that the driver and the passenger were not engaged in a joint adventure and, therefore, the negligence of the driver was not imputable to the passenger.
The Tannehill case is likewise inapposite because the action was against a third party. It was there held that the negligence of the driver of an automobile, in crossing a railroad track, was imputable to one riding in the machine where they were joint owners engaged in a joint enterprise in an action against a third party.
It is true, in the Williams v. Barton case, this court stated [81 So.2d 27]:

"In conclusion we find that the record fails to establish any responsibility of Barton for the acts of Elijah Mitchell under the doctrine of respondeat superior; that all of the riders in the bus, including Jack Barton, Elijah Mitchell, the deceased husband of plaintiff, Glen Maxie, George Stewart and others were engaged in a common enterprise or joint venture and the negligence, if any, of the driver must legally be imputed to each of them. None of the charges of negligence have been established." (Emphasis supplied.)
This was purely obiter dictum, unsupported by any authority. No reference to the rule enunciated in the Lawrason case was made, nor was that rule directed to the court's attention. The real basis of the decision exonerating the driver from liability was the failure of the record to establish negligence on his part. As to this, the court stated:

"Reverting to the specific charges of negligence, we observe the record does not in fact disclose negligence on the part of the driver, Elijah Mitchell. The testimony indicates the shoulder gave away under the two right wheels *178 of the bus immediately after the bus started from a stop position. Maxie, Stewart and Medlock testified the shoulder gave no outward appearance of danger. Trooper Brown found upon his investigation that the shoulder caved under the wheels of the bus. The allegations that the driver of the bus was negligent in driving onto the unsafe shoulder at too rapid a rate of speed is unsupported by proof. All of the witnesses agreed that the accident did not occur until after the bus had stopped and then started up." (Emphasis supplied.)
Nor do we find any merit in defendants' plea of contributory negligence. The burden was upon the defendants to sustain this plea and, in this, it can only be concluded, from the record, they have failed. Considering all the facts upon which they rely to support this plea and accepting those facts as true, it cannot be properly or correctly said that the basis for the plea has been established beyond conjecture or a mere possibility. To sustain the plea, we would have to assume, without proof, dangers existed or confronted the driver known to Alvern C. Sumrall, or made known to him, or coming to his attention at such an instant as he had time and opportunity to warn the driver of such dangers. It would be necessary to further assume that, if such dangers existed or became manifest, Alvern C. Sumrall failed to protest or to warn the driver of such dangers; and that the driver was fatigued and that the deceased had knowledge thereof.
Finally, The Aetna Casualty and Surety Company contends that its policy, issued to L. J. Sumrall, insuring a Chevrolet pickup truck, did not afford coverage to the assured or to the Pontiac automobile he was driving at the time of the accident. Admittedly, the policy provides, insofar as applicable here, that "* * * such insurance as is afforded by this policy * * * applies with respect to any other automobile, * * *" subject, of course, to other appropriate provisions of the policy. Accordingly, it is urged that, under Part 1, Sec. V, Subsec. (d) (3), the aforesaid provision as to coverage excluded any automobile while used in a business or occupation of the named insured. This clause reads:

"This insuring agreement does not apply: * * * (3) * * * to any automobile while used in a business or occupation of such named Insured or spouse except a private passenger automobile operated or occupied by such named Insured, spouse, private chauffeur or domestic servant; * * *" (Emphasis supplied.)
A private automobile such as the Pontiac was, by the very terms of the policy, excepted from the effect of the provisions relating to the exclusion of coverage.
The defendant, likewise, denies coverage under Subsec. (d) (1) of the aforesaid section. This subsection reads as follows:
"This insuring agreement does not apply: (1) to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household other than a private chauffeur or domestic servant of such named Insured or spouse; * * *" (Emphasis supplied.)
It is therefore contended, in order for Aetna's policy to have afforded coverage to the automobile which L. J. Sumrall was driving, at the time of the accident, it was necessary that the automobile be neither owned by him nor available to him for his regular use. Accordingly, the defendant contends that this Pontiac was an automobile which L. J. Sumrall could and did regularly use, and that it was furnished for that purpose.
*179 The evidence, in our opinion, does not support defendant's position. This particular automobile was purchased by John O. L. Sumrall with community funds; it became an asset of the community of acquets and gains existing between him and his wife. The purchase of the car was made for her and it was used primarily by her as her individual automobile. The record contains evidence to the effect that the trip to Jena was the first occasion L. J. Sumrall used this car. The reasons for its use on that occasion were that John O. L. Sumrall was using the 1953 Pontiac and a mechanical defect prevented the use of the Chevrolet.
The question whether the automobile was furnished for regular use is one of fact and, as such, was submitted to the jury under the requested charge:
"* * * Therefore I charge you that if you find that the automobile driven by L. J. Sumrall and in which the deceased was riding at the time of the accident involved in this suit was owned by their father, John L. Sumrall, and was by him furnished to his sons or either of them for their regular use or permitted by him to be used regularly by them, then the policy of the Aetna does not cover in this case and you must find for the defendant Aetna."
The trial court found no manifest error in the jury's resolution of this question or in the conclusions reached by it, nor do we.
Defendant Aetna makes the point, however, that it is immaterial whether this particular automobile had ever been used by the partnership or had ever been driven by L. J. Sumrall. It is contended that the term "regular use" in the exclusionary clause of the policy does not refer to any specific automobile, but that it is the regular use of other automobiles that brings the exclusionary clause into operation. Cited in support of this position is the case of Moore v. State Farm Mutual Automobile Ins. Co., Miss., 121 So.2d 125. That case is distinguishable from the instant case upon the facts. In that case the employer furnished, for the regular use of its employees, ten motor trucks. It was while plaintiff was using one of the several trucks furnished for his regular use that he sustained injuries for which he sought to recover medical payments under a policy insuring his individual automobile. In the instant case, the automobile involved was not one of a number furnished for defendant Sumrall's regular use. We have no disagreement with the court on the conclusion there reached, so far as holding that it was immaterial, as concerns the exclusionary clause in the policy, whether the insured was using one or another of the ten vehicles at his disposal and furnished for his regular use.
It may be pointed out that the court was careful to observe
"* * * The insuring plan is to extend to the insured or any relative (member of household) the medical payments coverage while the insured or relative is occupying automobiles other than the one defined in the policy if the other automobile is not owned by or furnished for the regular use of the named insured or relative. This means that such protection is extended to casual or infrequent occupancy of other automobiles than the one named in the policy. It is regular double coverage that the exclusionary clause avoids. * * *" (Emphasis supplied.)
The exclusionary clause in the policy herein concerned, quoted hereinabove, is clear and unambiguous and needs no interpretation. Tersely stated, the effect of the exclusion is that the insuring clause does not afford coverage to any automobile owned by the assured other than the vehicle designated in the policy; nor does it apply to one furnished for his regular use. No *180 uncertainty or ambiguity is disclosed in the language employed in the confection of this clause of the policy.
A policy of insurance is a contract between the parties and, so far as they are concerned, it is the law of the case. The rules for its interpretation are the same as for the interpretation of agreements generally. Where the language is clear and expresses the intention of the parties, the contract is enforced as written. LSA-C.C. Arts. 1901, 1945, 1946; Kendrick v. Mason et al., 234 La. 271, 99 So.2d 108; Albritton et al. v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111; Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777; Nyman v. Monteleone-Iberville Garage, Inc. et al., 211 La. 375, 30 So.2d 123; Velotta v. Western Fire Ins. Co., La.App.1960, 121 So.2d 857; King v. Mason et al., La.App.1957, 95 So.2d 705. However, in construing the provisions of an insurance contract as binding the parties thereto, the words of the agreement will be given their general and popular interpretation and not that which is strained and unusual. LSA-C.C. Art. 14. If the terms are clear and unambiguous, they are to be taken and understood in their plain and ordinary sense. While all uncertainties and ambiguities must be construed in favor of the insured and against the insurer, courts are unauthorized to alter the terms of the policies under the guise of interpretation when they are couched in unambiguous language. Monteleone v. American Employers' Ins. Co., 239 La. 773, 120 So.2d 70; Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483; Edwards v. Life & Casualty Ins. Co. of Tenn., 210 La. 1024, 29 So.2d 50.
Although neither of the parties contends that the provisions of the exclusionary clause as such are ambiguous, yet, defendant contends that the use of another automobile by the insured, not owned by him and not furnished for his regular use, falls within the exclusion of coverage regardless of its ownership and despite the fact it had not been furnished for his regular use. The language used makes it very clear, in our opinion, that the insuring clause is applicable to any automobile while operated or occupied by the insured except one owned by him and one furnished for his regular use. The policy contains no language warranting or justifying a conclusion that the exclusion of liability extended to any other automobile or to the use of any other automobile used in lieu of or as a substitute for one furnished for the assured's regular use. To sustain this defense, we would have to extend the exclusion of coverage to other cars and to other situations than those designated in the policy. This we cannot do in the guise of interpreting the contract.
The liability of an insurer under an insurance policy is determined by its terms. In the confection of the contract, the parties are at liberty to select the types of risks to be covered, the limits of liability, and any other provisions consistent with public policy. Had the insurer desired to exclude from the coverage of its policy other cars and other situations than those owned by or furnished for the regular use of its assured, appropriate language could have been used to clearly express that purpose.
To hold that the terms of the policy may possibly be construed so as to extend the exclusion of coverage, as defendant contends, would avail nothing. Then, of a certainty the language would be ambiguous and uncertain in meaning. It is well settled in the jurisprudence that all ambiguities in an insurance policy must be construed against the insurer. The insurer, in preparing the policy, had the opportunity to employ such language as would have expressed its intention clearly and unmistakably. Albritton v. Fireman's Fund Ins. Co., supra; LSA-C.C. Arts. 1957, 1958.
*181 Therefore, we find no merit in this additional defense that there was, under the terms of the policy, no coverage of the Pontiac automobile or of the driver, L. J. Sumrall, at the time of the fatal accident.
For the reasons assigned, we find no just grounds or reasons for concluding that the jury and the trial court committed manifest error in their findings of fact on the several factual issues presented to them for determination. The jurisprudence is well established that an appellate court should not reverse a finding of fact by the trial court unless such finding is clearly and manifestly erroneous. This is such a case we feel the rule should be adhered to.
There remains, for consideration, only the question of the quantum of damages. Plaintiff Alvern C. Sumrall, on graduating from Louisiana Polytechnic Institute of the Class of 1951, was awarded a degree of Bachelor of Science in civil engineering and became a registered civil engineer. While serving in the Armed Services of the United States, he was married, June 7, 1952, to Mrs. Sylvia Cooper Sumrall. Following the completion of a period of military service and after a brief period of employment, the Sumrall Construction Company was created, in October, 1954, composed of Alvern C. Sumrall, a brother, L. J. Sumrall, who was also a graduate of Louisiana Polytechnic Institute in civil engineering, and their father, John O. L. Sumrall. Each of the partners had a one-third interest in the partnership.
The business of the partnership was general construction. This business generally prospered and, during the period of 33 months preceding the death of Alvern C. Sumrall, each of the partners netted about $700 per month. At the time of his death, Alvern C. Sumrall was 28 years of age and had a life expectancy of 41.44 years. Mrs. Sumrall was 24 years of age. Since the death of this partner, the other two have continued the business and, according to the record, each has netted approximately $10,000 annually.
Plaintiff and her husband lived together for a brief period of five years. Of this union, three children were born, ranging in age, at the time of his death, from one to four years. That they enjoyed an ideal home life, filled with love, mutual respect and admiration is abundantly reflected by the record. As has been stated many times, no amount of money could adequately compensate the surviving widow and minor children for the loss they sustained in support, love, and companionship in the untimely and unfortunate death of a husband and father.
We are fully cognizant of the efforts made to remove the determination of awards in cases, such as this, so far as possible, from a more or less arbitrary determination and to find some basis of calculations predicated upon monetary loss, particularly as to earnings and support. Some of these efforts are reflected in the cases of Jones v. Kansas City Southern Ry. Co., 143 La. 307, 78 So. 568; McFarland v. Illinois Central R. Co., La.App.1960, 122 So.2d 845; Day v. National-U.S. Radiator Corp., La. App.1959, 117 So.2d 104; Stephens v. Natchitoches Parish School Board, La.App. 1959, 110 So.2d 156; Duree v. State, La. App.1957, 96 So.2d 854; Marler v. State, La.App.1955, 78 So.2d 26.
Many factors, however, must be considered in fixing an award. As observed by Judge Landry in the McFarland case [122 So.2d 860],
"It is common knowledge, however, that under our present day economy only a few individuals continue to remain gainfully employed throughout their full life expectancy. The social security program inaugurated by our Federal Government, as supplemented by pension and retirement funds and provisions which have come to form an integral part of every employee's total compensation, now assures that virtually every employed citizen may reasonably *182 anticipate retirement while yet possessing several years life expectancy."
Other factors include the ability of the defendant to respond in damages. Insurance only to the extent of $55,000 is available for the payment of any award made to plaintiff and her minor children. Any additional award must be assessed against deceased's younger brother, who also has a home to maintain and a wife and children to support. The source of his income, so far as the record discloses, is limited to his interest in the partnership business operated jointly with his father and in which he is actively engaged.
Giving due consideration to all of the factors and equities on both sides, no good purpose could, in our opinion, be served by prolonging this opinion and the fixing of awards based upon precise or minute calculation. Taking all the facts into consideration we conclude that an award of $12,500 for each of the minors and $37,500 for the surviving widow is adequate so far as we may evaluate the loss of support and for the sorrow and grief sustained, and for the love and companionship which they have lost, as well as for the special item of damages incurred by the widow for funeral and incidental matters.
For the reasons assigned, the judgment appealed is amended and recast, and, accordingly,
It is ordered, adjudged and decreed there be judgment in favor of Mrs. Sylvia Cooper Sumrall, individually, for the full sum of $37,500, together with legal interest thereon from judicial demand until paid, against L. J. Sumrall, The Aetna Casualty and Surety Company, and St. Paul Mercury Indemnity Company, in solido; and further judgment in favor of plaintiff, Mrs. Sylvia Cooper Sumrall, as natural tutrix of Cheryl Ann Sumrall, Vicky Lynn Sumrall, and John Michael Sumrall, in the full sum of $37,500, together with legal interest thereon from judicial demand until paid, prorated equally, or for $12,500, together with legal interest thereon from judicial demand until paid, for each of said minors, against the said L. J. Sumrall, The Aetna Casualty and Surety Company, and the St. Paul Mercury Indemnity Company, in solido, with the liability of the St. Paul Mercury Indemnity Company limited to $5,000, plus legal interest thereon from judicial demand until paid, and with the liability of The Aetna Casualty and Surety Company limited to the next $50,000, plus legal interest thereon from judicial demand until paid.
It is further ordered, adjudged and decreed that the liability of each of the defendant insurers be and the same is hereby apportioned among plaintiff and the three minor children according to their total awards;
It is further ordered, adjudged and decreed that the cost, including the cost of this appeal, be, and it is hereby, assessed against defendants L. J. Sumrall, St. Paul Mercury Indemnity Company, and The Aetna Casualty and Surety Company, in solido, and
That plaintiff's demands, individually and as natural tutrix for the aforesaid minor children, against Campbell Construction Company, Indemnity Insurance Company of North America, Austin Contracting Company, and the Superior Insurance Company, as well as St. Paul Fire and Marine Insurance Company, are hereby rejected; and
That, as thus amended and recast, the judgment appealed is hereby affirmed.
Amended and affirmed.