**NEW AMSTERDAM CASUALTY
COMPANY, Appellant,
v.
Curtis ELLZEY, Sr., Appellee.
No. 16258.**

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1957.

Charles R. Galloway, Eaton, Cottrell, & Galloway, Gulfport, Miss., for appellant.

Jacob D. Guice, W. L. Guice, Rushing & Guice, Biloxi, Miss., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This appeal from a summary judgment entered in favor of Curtis Ellzey, Sr. in his suit against New Amsterdam Casualty Company, presents a single question of law, and that is whether the trial court correctly held the defendant insurer liable on a Comprehensive Liability Policy for personal injuries to a third person caused by an accident which arose out of the following stipulated facts:

In July, 1954, while the policy was in full force and effect, the insured, who owned and operated several retail hard-

---

ware and appliance stores, sold a thirty-inch Reed window fan to one Mrs. Katz, and on July 26, 1954, the insured's employees went to her home to install the fan in the top half of a bedroom window which opened onto a screened back porch. The fan itself was not defective, but it was improperly installed with the fan-guard facing onto the porch, thus leaving no guard or protection from the side which faced or protruded into the bedroom, and "said installation was completed and the fan left on the premises of Mrs. Katz for use." Later on the same day and after the insured's employees had completed the installation and left the premises, Mrs. Katz, who was then in her bedroom, sustained serious painful and disabling injuries when one or both of her hands came into contact with the blades of the fan. Thereafter, she made demand upon the insured for damages, and the latter thereupon called upon the insurer for defense and/or settlement of the claim. The insurance company denied liability under the terms of its policy whereupon the insured undertook to defend the claim and through his attorneys who were employed for that purpose effected a settlement with Mrs. Katz for $3,500. For services rendered insured's attorneys were paid $200.00. It was specifically stipulated that the method of installation might have been found to be a negligent method of installation and might have been found to have been the proximate cause of Mrs. Katz's injuries, and that the amounts paid in settlement of the claim and to insured's attorneys were both reasonable sums, and were to the best interests of the insured and constituted an acceptable and reasonable settlement of the claim. It was to recover these sums that the present suit was brought.

The policy in suit is a Comprehensive Liability Policy covering all of the business operations of the insured except those specifically excluded under various endorsements attached to the policy. It provides coverage for bodily injury liability and property damage liability for several places of business in the cities of Gulfport, Biloxi, Pascagoula, and Ocean Springs, Mississippi. On the face of the policy under the heading, "Declarations" appear: Item 1, which sets forth the name of the insured and shows his business to be "Bakery and retail hardware and appliance stores."; Item 3, which lists coverages, among which only Coverage A. Bodily Injury Liability is pertinent to this case; and Item 4, which recites that "the declarations are completed on attached schedules designated 'A' and 'B'." Only Schedule A is involved in this suit and it contains a "Description of Hazards" as follows: "(a) Premises-Operations (here are typed the locations of five places of business, designated by the general descriptive terms "Stores-Hardware-retail" and one place of business designated "Bakeries"); * * * (d) Products (Including Completed Operations)—*Excluded* * * *."[1] Under the general heading "Conditions", and in Paragraph 3 thereof entitled "Definitions", the policy further provides that the term "products hazard" means:

"(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises, owned, rented or controlled by the insured or on premises for which the classification stated in division (a) of the declarations or in the company's manual excludes any part of the foregoing;

"(2) operations, if the accident occurs after such operations have been completed or abandoned at the

---

1. Other hazards listed as (b) Elevators, (c) Independent Contractors, and (e) Contractual, all of which bear the notation "None at Inception", are not involved.

place of occurrence thereof and away from premises owned, rented or controlled by the insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in division (a) of the declarations or in the company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement."

Attached to and of even date with the policy are several endorsements, two of which are pertinent here. The first endorsement states that the policy does not apply except in connection with the conduct of a business of which the named insured is the sole owner, and provides that "business" includes trade, profession or occupation. The other endorsement involved in this case, numbered BE 468799, provides, in part: "It is agreed that the policy does not apply: 1. to the products hazard as defined in the policy * * *" In the court below, as here, the insurance company argued that the accident in question was specifically excluded by Endorsement No. BE 468799, but the trial court being of opinion that the policy covered all matters reasonably incidental to the insured's trade or business, including claims arising from a defective installation of an appliance sold by the insured, rejected the insurer's contention. In its opinion the court stated that the endorsement "bears the same date as the policy itself so that the 'Products Hazard' clause was never a part of the policy and it does not afford the defendant any basis for a defense to plaintiff's claim herein." The court recognized, however, that if the products hazard clause had remained in the policy, it would have given the insurance company a complete defense to the claim of the insured under the policy.

We think it plain that the trial court erred in rejecting the insurer's defense, and in awarding judgment to the insured. The endorsement clearly states that it is the products *hazard* which is excluded, not the definition thereof as appears in Paragraph 3(f) of the Definitions. The endorsement also makes it clear that the products hazard which is excluded is the products hazard "as defined in the policy." Thus, the "products hazard" definition was not "out of the case * * * as if it had not been printed in the body of the policy," but instead formed an integral part of the typewritten endorsement as if it were set forth therein in full. Assuming without deciding, that the general coverage of insured's "Premises-Operations" includes liability for the claim in suit, it is hornbook law that the special written limitation embodied in Endorsement No. BE 468799 controls. This being so, and it having been stipulated that the "installation was completed and the fan left on the premises for Mrs. Katz for use", the claim for injuries resulting from the accident which occured after the insured's installation operations had been completed and abandoned at the customer's premises fell squarely within and is excluded by the terms of subparagraph (2) of the products hazard definition. Accordingly, the judgment of the District Court is

Reversed.