140 So.2d 215 (1962)
Herman THIBODEAUX
v.
PARKS EQUIPMENT COMPANY, The Travelers Insurance Company, Humble Oil and Refining Company and Ashbury S. Parks.
No. 5472.
Court of Appeal of Louisiana, First Circuit.
March 14, 1962.
Rehearing Denied May 4, 1962.
Certiorari Denied June 15, 1962.
*216 Durrett, Hardin, Hunter, Dameron & Fritchie, by Wallace A. Hunter, Baton Rouge, for plaintiff-appellant. W. J. McAnelly, Jr., and Bernard J. Caillouet, and Milling, Saal, Saunders, Benson & Woodward, New Orleans, for third-party-plaintiff-appellant, Humble Oil & Ref. Co.
Taylor, Porter, Brooks, Fuller & Phillips by Robt. J. Vandaworker, Baton Rouge, for defendant-appellee, Travelers Insurance Co. Sanders, Miller, Downing, Rubin & Kean by Ben R. Miller, Baton Rouge, for defendant-appellee, Parks Equipment Co.
Before ELLIS, HERGET, and MILLER, JJ.
HERGET, Judge.
Plaintiff, Herman Thibodeaux, alleges in this suit for personal injuries that while he was an employee of Delta Tank Manufacturing Company he was injured on March 10, 1959 while testing a Dryex unit being manufactured by Delta Tank Manufacturing Company under the supervision of Humble Oil and Refining Company. He alleges at the time of the test a valve manufactured, designed and sold by Parks Equipment Company failed and because of its failure other parts of the unit struck and injured him. Plaintiff further alleges that the employees of Parks Equipment Company were negligent: (a) in the manufacture of the valve; (b) in its inspection; (c) in its design; (d) in representing to Delta Tank Manufacturing Company that the valve could be used as a component part of the Dryex unit; (e) in failing to warn Delta that the valve could not safely be used in the Dryex unit; (f) in failing to give proper instructions for its use; and (g) in failing to give proper instructions for its installation in the unit.
Plaintiff filed a petition originally against Parks Equipment Company, its insurer The Travelers Insurance Company and Humble Oil and Refining Company. In the same suit Plaintiff filed a supplemental petition against Ashbury S. Parks in his capacity as executive officer of Parks Equipment Company and his insurer The Travelers Insurance Company. Humble answered the original petition and filed a third party petition against Travelers, *217 Parks Equipment Company and Ashbury S. Parks. Travelers filed exceptions of no cause of action to the petitions of Plaintiff and the third party petition, contending the policy by which it insured Parks Equipment Company excluded "products hazard" and failed to provide coverage for the alleged accident. The Trial Court sustained the exceptions, thereby dismissing both Plaintiff's suit and the Third party action against Travelers, from which judgments both Plaintiff and third party petitioner Humble Oil and Refining Company bring these consolidated appeals.
Appellee admits that it issued a Comprehensive General Liability Policy to Parks Equipment Company whereby it agreed:
"1. COVERAGE ABODILY INJURY LIABILITY
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
The policy contains an endorsement providing:
"It is agreed that the policy does not apply to the products hazard as defined therein."
* * * * * *
This definition, found in another section of the policy, under "Conditions" reads as follows:
"3. DEFINITIONS.
* * * * * *
"(c) PRODUCTS HAZARD. The term `products hazard' means
"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * *."
It is stipulated that the accident occurred after possession of the valve had been relinquished by Parks Equipment Company and it is also stipulated that the accident occurred away from the premises of Parks Equipment Company.
Appellants urge us to consider that the alleged accident, while it involved the operation of a product, also resulted from the negligent acts of the employees of Parks Equipment Company. They contend that products liability is limited to a contractual liability imposed by a warranty agreement between the insured and another, but the contractual liability would not prevent coverage for liability in tort. They allege that products hazard insurance was simply additional insurance to the general contract. But, they argue, if the general contract covers the alleged negligence, the exclusion of products hazard does not eliminate nor exclude that liability for negligence. Appellants argue that liability under the general terms of the contract *218 and liability under the products hazard clause are not mutually exclusive.
Learned counsel for Appellee maintains that the broad unrestricted language of the "Insuring Agreements1. Coverage A," supra, does, in the absence of any limitations, provisions or exclusions, afford coverage for any and all liability of the assured so long as the liability arose by accident and involved bodily injury. He maintains that the endorsement 3998 reading in part, as follows:
"EXCLUSION OF PRODUCTS HAZARD
"It is agreed that the policy does not apply to the products hazard as defined therein."
* * * * * *
under the definition of the term "products hazard" in the "Conditions" quoted in part, supra, effectively excludes from coverage the claims of Plaintiff asserted in his petition. The position of counsel for Appellee is succinctly stated in his brief as follows:
"The exclusion of products hazard in the policy at issue in this case had the effect of deducting, excluding and eliminating from INSURING AGREEMENT I, A, coverage for all claims arising under the products hazard. In other words, if the claim could come under products hazard, it is not covered by this policy. Now products hazard relates to claims arising out of:
"`goods or products manufactured, sold, handled or distributed by the named insured * * * if the accident occurs after possession of such goods or products has been relinquished to others by the named insured * * * and if such accident occurs away from premises owned, rented or controlled by the named insured * * *.'
It has been stipulated that the named insured had parted with possession of the valve in question and that the accident occurred away from the assured's premises. It is simply impossible to read the allegations of the petitions in this litigation and reach any conclusion except that this is a products liability case. Directly or indirectly, the alleged liability arises out of the goods or products of the named insured which were out of the insured's possession at the time of the accident and away from the insured's premises. * * *"
It is axiomatic in Louisiana in passing upon an exception of no cause of action that all well-pleaded allegations of fact in plaintiff's petition are accepted as true. The issue before the Court at this time is purely one of law and to maintain the decision of the Trial Court sustaining the exceptions of no cause of action filed by Defendant-appellee to the petition and third party petition, this Court must conclude that the exclusion of products hazard is all-inclusive so as to relieve coverage by Defendant of all claims of the insured arising directly or indirectly out of goods or products of the named insured. To conclude that the exclusion of products hazard effectively relieves Defendant of all claims asserted by Plaintiff we must, in order to reach such determination, decide that the language of the contract of insurance providing such exclusion clearly and unambiguously so provides, for it is well settled in Louisiana that if the language of the contract of insurance is ambiguous such ambiguities must be construed in favor of the insured and against the insurer. Albritton v. Fireman's Fund Insurance Company, 224 La. 522, 70 So.2d 111, and cases therein cited.
Though in the case of Kendrick v. Mason, 234 La. 271, 99 So.2d 108, the Supreme Court of this State said, at page 116 of 99 So.2d:

*219 "We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. * * *"
In commenting upon provisions of the policy therein involved identical with those here under consideration it adopted as its own excerpts from the case of King v. Mason, La.App., 95 So.2d 705, 717 and said, 99 So.2d at page 115:
"`The first part of this definition is conceded to apply or refer to the warranty of goods or manufactured products, but it is argued that the second part of the definition has reference to contractors. We do not think the language of the contract and the endorsements and documents attached thereto warrant the conclusions urged as to this part of the definition; at least, the language used leaves the meaning vague, obscure and indefinite and it cannot be said, on this score, the policy is free from ambiguity.'" King v. Mason, supra.
And at page 116:
"* * * In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer. See Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, wherein general principles in the interpretation of insurance contracts are enunciated."
In Nielson v. Travelers Indemnity Company, 174 F.Supp. 648 the U. S. District Court, Central Division, State of Iowa, had under consideration the interpretation of the identical policy exclusions and quoted approvingly copiously from the decision of the Supreme Court of Louisiana in the Kendrick case, supra, and, at page 662, in commenting on said provisions, said:
"The Court is of the view and finds under the circumstances in this case the terms of the policy are ambiguous as to the matter of coverage here involved and leaves that matter in doubt. Under the Iowa law such doubt and ambiguity are to be resolved in favor of the insured."
See also Fidelity and Casualty Company of New York v. Fratarcangelo et al., 201 Va. 672, 112 S.E.2d 892.
We have read and reread the language of the products hazard definition but are unable to attribute to it the all-inclusive exclusion Appellee maintains same provides.
Certain allegations of the original petition and supplemental petition relate to negligence in connection with the Dryex unit, a contrivance or unit manufactured not by Parks but by Delta Manufacturing Company. These allegations of negligence relate to the installation and the use of the valve on the Dryex unit rather than to any defect in the valve itself.
In the recent case of Swillie v. General Motors Corporation et al., La.App. 133 So. 2d 813, coverage was afforded by a liability policy issued to Natchez Steel Products, Inc., which had manufactured and installed what was known as a "Natchez Double Loadster" and because of negligence attributable to the installation of the loadster plaintiff's husband was killed in an accident, the Court of Appeal for the Third Circuit of Louisiana held that the manufacture of the double loadster was a separate and distinct operation from the installation and as the alleged negligence resulted from the installation it was unnecessary to decide whether or not there was *220 coverage under the products hazard exclusion.
Concededly the case of New Amsterdam Casualty Company v. Ellzey, 5 Cir., 240 F.2d 618, relied on by counsel for Appellee and accepted by the Trial Court as decisive of the issue involved and authority for sustaining Appellee's exception of no cause of action, in this language of the opinion found at page 620:
"* * * The endorsement clearly states that it is the products hazard which is excluded, not the definition thereof as appears in Paragraph 3(f) of the Definitions. The endorsement also makes it clear that the products hazard which is excluded is the products hazard `as defined in the policy.' Thus, the `products hazard' definition was not `out of the case * * * as if it had not been printed in the body of the policy,' but instead formed an integral part of the typewritten endorsement as if it were set forth therein in full. * * *"
sustains the contention of counsel for Appellee that the products hazard exclusion eliminates all claims arising out of or directly or indirectly connected with the manufacture of the valve by Parks Equipment Company.
However, we are of the opinion that under the broad coverage of the "Insuring Agreements1. Coverage A" the alleged negligent acts of Parks Equipment Company relating to * * * (d) in representing to Delta Tank Manufacturing Company that the valve could be used as a component part of the Dryex unit; (e) in failing to warn Delta that the valve could not safely be used in the Dryex unit; (f) in failing to give proper instructions for its use; and (g) in failing to give proper instructions for its installation in the unit, are not excluded by virtue of the policy's products hazard exclusions endorsement and definition thereof and as to said acts the petitions set forth a cause of action against Appellee for coverage, and Travelers is a proper party defendant. Therefore, the exceptions of no cause of action filed by The Travelers Insurance Company levelled at Plaintiff's original and supplemental petitions and the Third Party petition of Humble Oil and Refining Company are overruled; the judgments of the Trial Court sustaining same are reversed and the case is remanded to the District Court for further proceedings not inconsistent with this decree.
Reversed and remanded.
ELLIS, Judge (dissenting).
Plaintiff has appealed from a judgment of the District Court which sustained an exception of no cause of action filed to his petition for damages for personal injuries suffered as a result of an accident which occurred on March 10, 1959, at which time he was employed by Delta Tank Manufacturing Company and engaged in testing a Dryex unit which had been manufactured by said company. The basis of plaintiff's suit is an allegation that while testing the Dryex unit the valve manufactured, designed and sold by Parks Equipment Company failed and a "heavy six-inch pipe under pressure was caused to whip into and against plaintiff's legs causing the injuries and damages * * *". Plaintiff sets forth in his petition seven grounds of negligence allegedly committed by the officers, agents and employees of Parks Equipment Company, denoted (a) through (g) in his petition and set forth in the beginning of the majority opinion, which relieves me of the necessity of restating these grounds.
The Travelers Insurance Company, insurer of Parks Equipment Company, filed the exception of no cause of action to the petition of plaintiff and the third party plaintiff, based upon the ground that the policy excluded "products hazard" as defined in the policy under (1) and that the allegations of the petition placed the accident in which plaintiff allegedly suffered his injuries squarely within the definition *221 of "products hazard" as defined in the policy under (1), and as such coverage was specifically excluded the petition failed to state a cause of action.
The trial court agreed fully with counsel for Travelers-Exceptor, hence the appeal to this court by plaintiff and Humble Oil and Refining Company, the third party plaintiff.
The pertinent portions of the policy of insurance covering Parks Equipment Company and stipulation of counsel necessary to a decision as to the correctness vel non of the judgment of the Trial Court in sustaining the exception of no cause of action are as follows:
"1. COVERAGE ABODILY INJURY LIABILITY.
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
The policy contains an endorsement providing:
"It is agreed that the policy does not apply to the products hazard as defined therein.
* * * * *
"3. DEFINITIONS.
* * * * *
"(c) PRODUCTS HAZARD. The term `products hazard' means
"(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods, or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;"[1]
Counsel stipulated that:
"The accident sued upon occurred after possession of the `union fitting' or valve had been relinquished by Parks Equipment Company."
The accident sued upon occurred away from premises owned, controlled or rented by Parks Equipment Company.
The majority opinion has correctly stated the issue as urged by the appellant and the appellee, however, in discussing the contention of the appellee as stated in his brief the majority[2] states that to maintain *222 the exception of no cause of action this court must conclude that the exclusion of products hazard is all inclusive so as to relieve coverage by defendant for all claims of the insured arising directly or indirectly out of the goods or products of the named insured; if it is concluded that the exclusion of products hazard effectively relieved defendant of all claims asserted by the plaintiff it must decide that the language of the contract of insurance providing such exclusion clearly and unambiguously so provides, for it is well settled in Louisiana that if the language of the contract of insurance is ambiguous such ambiguities must be construed in favor of the insured and against the insurer, citing Albritton v. Fireman's Fund Insurance Company, 224 La. 522, 70 So.2d 111 and cases therein cited; also Kendrick v. Mason, 234 La. 271, 99 So.2d 108, and King v. Mason, La.App., 95 So.2d 705. Also several cases from other states.
The majority, based upon the quotes from the cases cited, evidently decided that the provisions of the policy in question with regard to the exclusion and definition of products hazard was ambiguous, although it is not definitely and specifically so stated therein. The majority then concludes that the definition of products hazard was "an all inclusive exclusion" as maintained by appellee, and that the allegations of negligence relating to the installation and use of the valve on the Dryex Unit rather than those touching upon the defect in the valve itself and as particularly contained in plaintiff's petition under allegations of negligence (d) through (g) were not excluded by virtue of the policy's products hazard exclusion endorsement and definition, and as to the acts of negligence set forth in these allegations the petition set forth a cause of action against appellee for coverage. In support of his conclusion is cited Swillie v. General Motors Corporation et al., La. App., 133 So.2d 813.
The majority conceded, and correctly so, that the case of New Amsterdam Casualty Co. v. Ellzey, 5 Cir., 240 F.2d 618, which was relied upon by counsel for appellee and accepted by the trial court as decisive of the issue involved and as authority for sustaining appellee's exception of no cause of action, did sustain the contention of counsel for appellee that the products hazard exclusion eliminated all claims arising out of or directly or indirectly connected with the manufacture, sale, handling or distribution of the valve by the Parks Equipment Company under the definition of "Products Hazard" as set forth in the policy, and the stipulation that the accident occurred after possession of the valve had been relinquished by Parks Equipment Company and away from the premises of that company.
While I believe that the brief of the appellee and exceptor fully and conclusively answers all arguments and contentions of the defendants made in oral argument or brief as well as the reasons given by the majority as a basis for reversing the judgment of the District Court which sustained the exception of no cause of action, I will as briefly as possible discuss my reasons for disagreeing with the majority in its reversal of the judgment. I am firmly of the opinion that the judgment of the District Court sustaining the exceptions of no cause of action should be affirmed.
I am in wholehearted agreement with the contention of appellee and exceptor that INSURING AGREEMENT I, A, when[3] considered alone and separate from the other provisions of the policy covers the insured against all kinds of liability, whether arising out of negligence, contract, warranty or any other source so long as *223 the liability arose by accident and involved bodily injury, but when considered with the other provisions, particularly the exclusion, as contained in Endorsement (3998) which reads as follows:
"EXCLUSION OF PRODUCTS HAZARD
"It is agreed that the policy does not apply to the products hazard as defined therein, * * *."
and Definition (c) (1), supra, limits and defines the coverage afforded by the whole policy, and when applied to the allegations of plaintiff's petition and the stipulation of the parties, supra, judgment of the District Court in sustaining the exception of no cause of action was correct and should be affirmed. It is not necessary that we consider (2) with regard to "operations" for under the allegations and the stipulation, the manufacture, sale, handling and distribution of the valve was complete upon delivery to the purchaser, therefore it comes under and is controlled by (c) (1). If the Parks Equipment Company, appellee and exceptor, in connection with the sale and as part of the consideration given for the purchase price had agreed to install the valve and the accident occurred after such installation, it would come under the holding of New Amsterdam Casualty Co. v. Ellzey, supra, and the claim would be automatically excluded under the operations coverage afforded by the policy. In such a case, however, it would be necessary to interpret provision (2) with regard to "Operation".
The majority opinion conceded the inapplicability of Kendrick v. Mason, 234 La. 271, 99 So.2d 108, in which the Supreme Court of this State cited the case of King v. Mason, La.App., 95 So.2d 705, and, in considering the policy provisions therein involved identical with those in the case at bar, specifically stated that the Court of Appeal, Second Circuit had correctly analyzed and construed the provisions of the policy in question and had adopted material excerpts therefrom as its own, and quoted a portion of the excerpts used by the Supreme Court as follows:
"`The first part of this definition is conceded to apply or refer to the warranty of goods or manufactured products, but it is argued that the second part of the definition has reference to contractors. We do not think the language of the contract and the endorsements and documents attached thereto warrant the conclusions urged as to this part of the definition; at least, the language used leaves the meaning vague, obscure and indefinite and it cannot be said, on this score, the policy is free from ambiguity.' King v. Mason, supra.
* * * * * *
"* * * `In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligations therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer. See Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, wherein general principles in the interpretation of insurance contracts are enunciated.'"
From the above quoted portion of the opinion in the case of King v. Mason, supra, it is apparent that the ambiguity referred to therein was found applicable by the court only to the "second part of the definition" which contains the same wording as the second part of the exclusion under products hazard with regard to "operations" as provided in the policy in question in the case now being considered. There is no ambiguity and I am unable to find any case in which the courts have found that provisions (1) under "3. DEFINITIONS (c) PRODUCTS HAZARD" is ambiguous and this is the only provision which it is necessary *224 to consider under the allegations and stipulations in the case at bar.
The majority opinion cites the case of Swillie v. General Motors Corporation et al., La.App., 133 So.2d 813 and states that "the Court of Appeal for the Third Circuit of Louisiana held that the manufacture of the double loadster was a separate and distinct operation from the installation and as the alleged negligence resulted from the installation it was unnecessary to decide whether or not there was coverage under the products hazard exclusion."
Counsel for appellee and exceptor has clearly and ably discussed and distinguished the Swillie case from the case at bar in his brief and I take the liberty of quoting the pertinent portion which is as follows:
"* * * In the Swillie case, the policy of Natchez Steel Products Co., Inc., was the same as the policy of Parks Equipment Company in this case. The facts indicated that Natchez Steel Products Co., Inc., hereafter called `Natchez Steel', was the manufacturer of a kit or assembly which, when installed on a truck, would increase the load capacity of the truck. This kit, assembly or device was called a double loadster. Under ordinary circumstances, the double loadsters were manufactured by Natchez Steel and sold to distributors for resale and installation. The particularly double loadster involved in the Swillie case was sold by Natchez Steel to a distributor named Natco Equipment Co., Inc. which the court found to be an entirely separate and distinct legal entity from Natchez Steel although there were some close connections between the two corporations. Natco, the distributor, sold the double loadster to Guice Chevrolet Company for installation on a truck purchased by Swillie. Since Natco did not have the means to install the double loadster on the truck, it contracted with Natchez Steel to install it on Swillie's truck for a fee of $100.00. Three days after the installation of the double loadster, the accident occurred because of faulty installation while Swillie was driving the truck.
"Liberty Mutual, the insurer of Natchez Steel under a Comprehensive General Liability Policy with a Products Hazard exclusion, denied coverage under the policy. The plaintiff contended that Natchez Steel did have coverage and asserted contentions fully set forth on page 26 of Thibodeaux's brief but not in the opinion of the court. It is highly significant that the court chose to rest its decision in favor of coverage not on the arguments and contentions made by our opponents in the Thibodeaux case but on the very narrow basis we shall now discuss.
"The essence of the Swillie decision is found in the following language from the opinion:
"* * * `it appears clear that when Natchez Steel Products Company, Inc., installed the defective brake line it was not handling or selling a product, but was simply performing work, that is, selling services for which it charged $100.' * * *" (page 823)
* * * * * *
"* * * `Under these facts, it is our opinion that the manufacture of the double loadster was a separate and distinct operation from the installation of the double loadster and brake lines and the evidence is clear that it was during the installation that the defective flare was placed on this truck by employees of Natchez Steel Products Company, Inc.'"
In other words, the court concluded that in contracting to install the double loadster for Natco for a fee of $100.00 it did so solely as a seller of services which had nothing whatever to do with its previous connection with the double loadster in its capacity as manufacturer. The court was very careful to point out that the installation work done by Natchez Steel pursuant to the contract with Natco had nothing *225 whatever to do with manufacturing, handling or selling the product, i.e., the double loadster. The implication is very, very clear that the conclusion of the court would have been very different if the installation had been done in connection with the sale of the double loadster by Natchez Steel; if the defect occurred prior to the sale by the manufacturer or, in fact, if it had not been for the unusual and peculiar re-entry of Natchez Steel into the picture in an entirely new capacity, i. c., as a seller of services or, as the court said, as a contractor. Having reached the conclusion that Natchez Steel was only a contractor, it applied the doctrine of Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958) which held that the definition of products hazard does not refer to a contract for services only; and, therefore, the exclusion of products hazard does not apply where only services are sold by contract.
"Contrast the factual situation in the Swillie case with the allegations of the petitions in the Thibodeaux case, the stipulations on which the exceptions were tried and the depositions of A. S. Parks all of which show that the claims and contentions against Parks Equipment Company and A. S. Parks in his capacity as an executive officer of Parks Equipment Company are solely and completely against these parties in connection with the manufacture and sale of the valve. Neither Parks Equipment Company nor its president, A. S. Parks, while acting in that capacity, had anything to do with the valve except manufacture it and sell it to Delta. They did not install the valve in the unit under test at the time of the accident, and it was not even contended that they did. It is not contended that Parks Equipment Company or its president acting in that capacity, ever rendered any service or performed any contract in connection with the valve which was not intimately connected with the manufacture and sale of that valve * * *".
There is no question but that the case of New Amsterdam Casualty Co. v. Ellzey, supra, sustains, and it is so admitted in the majority opinion, the contention of counsel for appellee that the products hazard exclusion eliminates all claims arising out of or directly or indirectly connected with the manufacture, sale, handling, or distribution of the valve in question by Parks Equipment Company.
Every provision of the exclusion of products hazard as defined in the policy under "3. DEFINITIONS(c) PRODUCTS HAZARD" has been satisfied as the valve was manufactured and sold by Parks Equipment Company and the accident occurred "after possession of such goods or products has been relinquished to others by the named insured * * * and * * * such accident occurs away from the premises owned * * * by the named insured."
I am therefore of the opinion that the alleged liability set forth in the petition and particularized by the seven alleged acts of negligence committed by the Parks Equipment Company arises out of the manufacture and sale of the valve by the named insured which sale had been completed and delivery made to the purchaser at the time of the accident which occurred away from the premises of the Parks Equipment Company.
For the above and foregoing reasons I am therefore of the opinion that under the broad coverage of the "INSURING AGREEMENT I, A" all of the alleged negligent acts of Parks Equipment Company from (a) through (g) are excluded by virtue of the policy's products hazard exclusion endorsement and definition thereof under provision (c) and the stipulation of fact and that the plaintiff's petition fails to set forth a cause of action against the appellee and that the judgment of the District Court in sustaining said exception was correct and should be affirmed.
I therefore respectfully dissent from the majority opinion.
NOTES
[1] The majority opinion has also quoted (2) as contained in the policy, however, we are not concerned with this provision under the facts alleged in the petition and the stipulation in the record.
[2] That if the claim could come under products hazard it is not covered by the policy, for products hazard relates to claims arising out of "goods or products manufactured, sold, handled, or distributed by the named insured * * * if the accident occurs after possession of such goods or products has been relinquished to others by the named insured * * * and if such accident occurs away from premises owned, rented or controlled by the named insured * * *" and that as it has been stipulated that the insured had parted with possession of the valve in question and the accident occurred away from the insured's premises it was simply impossible to read the allegations of the petition in the suit and reach any conclusion except that this was a "products liability case, and that directly or indirectly the alleged liability arises out of the goods or products of the named insured which were out of the insured's possession at the time of the accident and away from the insured's premises.
[3] "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."