**MOUNT VERNON FIRE INSURANCE CO., Plaintiff,**

v.

**PIED PIPER KIDDIE RIDES, INC., a New Jersey corporation, Food Fair, Inc., d/b/a Pantry Pride, a Pennsylvania corporation, Hope Y. Bodan and Robert Bodan, individually and as next friends of Susan R. Bodan, a minor, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted March 23, 1982.

Decided April 7, 1982.

Richard W. Pell, of Tybout, Redfearn, Casarino, & Pell, Wilmington, for plaintiff.

Victor F. Battaglia, and Wayne A. Marvel, of Biggs & Battaglia, Wilmington, for defendant Pied Piper Kiddie Rides, Inc.

CIVIL ACTION

O'HARA, Judge.

The parties have filed cross-motions for summary judgment in a declaratory judgment suit filed by Mount Vernon Insurance Company ("Mount Vernon"). The questions presented are whether the bodily injury alleged by Susan R. Bodan ("Bodan"), minor plaintiff in *Bodan v. Food Fair, Inc.*, Del.Super., C.A. No. 78C–MY–99 (1978), falls within the products hazard exclusion of the Owner's, Landlord's, and Tenant's Liability Policy issued to Pied Piper Kiddie Rides, Inc. ("Pied Piper"), and whether that injury falls outside the contractual liability provision of that policy.

The infant Bodan allegedly was injured on March 28, 1978, while riding a kiddie ride amusement device owned by Pied Piper. This ride was located on the property of a Food Fair, Inc. ("Food Fair") store. Bodan, through her next friend, filed a complaint against Food Fair and Pied Piper alleging negligence, breach of contract, strict liability in tort, and breach of duty as a common carrier against both defendants.

The Owner's, Landlord's, and Tenant's Liability Policy issued by Mount Vernon provided for bodily injury and property damage coverage as follows:

"1. COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises in all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allega-

tions of the suit are groundless, false or fraudulent, and make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of the judgments or settlements."

The policy contained a "products hazard" exclusion for injuries resulting from the insured's products and, by endorsement, it also provided coverage, under a hold harmless agreement with Food Fair as an additional assured, in respect to the presence, maintenance, operations, or use of the Pied Piper rides. The policy defined the insured premises as including a list of locations on file with the company. The premises-operations hazard was defined as "kiddie rides designed for small children . . . and games . . ." $24,750.00 of the total $25,500.00 premium was attributed to the 990 rides and $750.00 to the 75 games.

Mount Vernon contends that the injury to Bodan resulted from Pied Piper's products and, therefore, is excluded from coverage by the products hazard exclusion in the policy. It also argues that the complaint sounds in warranty against Food Fair and that such claims are excluded from coverage under the contractual liability provision. Pied Piper contends that the products hazard exclusion is not applicable and that the contractual liability provision includes all claims covered by the hold harmless agreement. In the alternative, Pied Piper alleges waiver of the products hazard exclusion and that Mount Vernon misled Pied Piper as to the extent of coverage. Pied Piper also contends that the contractual liability provision remains effective since not every count of the complaint sounds in warranty.

■ The parties agree that the Bodan complaint asserts claims which, but for the products hazard exclusion and the contractual liability warranty exception, would be covered by the policy. Therefore, the issue is the interpretation of the contract, a question of law. *Blum v. Prudential Insurance*

*Company of America*, N.J.Super., 125 N.J. Super. 195, 309 A.2d 905 (1973), aff'd N.J. Supr., 132 N.J.Super. 204, 333 A.2d 277 (1975).

## I. PRODUCTS HAZARD EXCLUSION

■ Premises and operations coverage, such as that at issue here, applies to injuries occurring on, or adjacent to, described premises. If injury occurs away from the insured premises, coverage does not exist. "Products hazard" coverage is that type of products liability coverage which protects the insured from liability for injuries resulting from the use of a product or from a completed operation which occurs away from the described premises after the insured had relinquished possession of the product or had completed the operation. The trend is to define "products hazard" coverage as that which protects against defective products, breached warranties, and misrepresentations and to define "completed operations" as coverage for services which do not involve goods or products. *See* Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 415–29 (1971).

Thus, if "products hazards" are excluded from the coverage and the insured does not purchase separate coverage, he is not insured against liability. *Hagen Supply Corp. v. Iowa National Mutual Insurance Co.*, 8th Cir., 331 F.2d 199 (1964), (negligent sales), *But see Farm Bur. Mut. Ins. Co. of Arkansas v. Lyon*, Ark.Supr., 528 S.W.2d 932 (1975); *Orchard v. Agricultural Insurance Co. of Watertown, N.Y.*, D.Or., 228 F.Supp. 564 (1964), aff'd, 9th Cir., 340 F.2d 948 (1965), (negligent delivery of an incorrect product); *Inductotherm Corp. v. N.J. Mfrs. Cas. Ins. Co.*, N.J.Super., 83 N.J.Super. 464, 200 A.2d 358 (1964), (failure to warn), *But see Thibodeaux v. Parks Equipment Company*, La.App., 140 So.2d 215 (1962); *Halliburton v. Diesi*, W.D.La., 209 F.Supp. 358 (1962), (defective products); *Aetna Casualty and Surety Co. v. Harvey W. Hottel, Inc.*, D.C.Cir., 289 F.2d 457 (1961), (negligent maintenance), *But see G. Yates Bldg. Sup.*

*v. Fid. & Cas. Co. of N.Y.*, Tex.App., 543 S.W.2d 709 (1976). The Bodan complaint recites similar causes of action which, essentially, are based on product liability theory. *See* Products Liability Repr. [CCH] ¶ 3530 (1980).

∎ The policy defines a "products hazard" as including three criteria. A products hazard

> "includes bodily injury and property damage arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage *occurs away from premises owned by or rented to* the named insured and after *physical possession* of such products *has been relinquished* to others;" (Emphasis added).

Two of the three products hazard criteria are met. First, the injury did not occur on a premise "owned by or rented to" Pied Piper, even though the Food Fair location was an insured premise for liability purposes,[1] and, secondly, physical possession had passed to Bodan at the time of her alleged injury. However, the kiddie ride does not come within the definition of a "named insured's product" as described in the definition section of the policy. That definition is:

> "... goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;"

Although Pied Piper "handles" goods in either the meaning of touch or feel, *Liberty Mutual Insurance Co. v. Hercules Powder Co.*, 3rd Cir., 224 F.2d 293 (1955) or in the sense of to deal, or trade, in, *Smedley Co. v. Employers Mut. Liability Ins. Co. of Wis.*, Conn.Supr., 143 Conn. 510, 123 A.2d 755 (1956), it is undisputed that they do not sell the goods. The ride may be "leased" to Food Fair as Mount Vernon alleges, the devices may be located at Food Fair stores for the use of a joint venture[2] as alleged in the Bodan complaint, or an individual defined ride may be rented out as alleged by Pied Piper. Uncontroverted evidence offered in support of a summary judgment motion must be accepted as true. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322 (1973). Therefore, the goods are either "rented to or located for the use of others" and are not within the definition of "named insured's product" in the products hazard clause.

Further support for this view is found in the insurance contract itself. Mount Vernon makes multiple references to the rides but always describes them as "devices." This term is used on 1) the certificate of insurance issued to Food Fair; 2) on the schedule of designated contracts; 3) on endorsement # 3 as to contractual liability; 4) on the description of the specific contract covered; and 5) on schedule L 6–415.

Similar "products hazard" clauses have been construed to the same effect: *Insurance Co. of N.A. v. Electronic Purification Co.*, Cal.Supr., 67 Cal.2d 679, 63 Cal.Rptr. 382, 433 P.2d 174 (1967), (generator leased to pool owner, therefore not within exclu-

---

1. Schedule L 6–415, attached to the policy, shows that the insured premises are those listed in item one of the declarations and "as per list of locations on file with the company." On the reverse side of this schedule, in the additional definition section, "insured premises" are defined as "(1) the premises designated in the declarations, ... (3) premises as to which the named insured acquires ownership or control ..." It is undisputed that Pied Piper sought and obtained coverage for its operations at designated locations.

2. In the Bodan complaint, it is alleged that both Food Fair and Pied Piper share in the collection of fees generated by the ride and, thus, they are engaged in a joint venture. "A joint venture has been broadly defined as an enterprise undertaken by several persons jointly to carry out a single business enterprise, not amounting to a partnership, for their mutual benefit, in which they combine their property, money, effects, skill and knowledge. The contribution of the parties need not necessarily be the same;" *J. Leo Johnson, Inc. v. Carmer*, Del.Supr., 156 A.2d 499 (1959).

sion); *Aetna Insurance Co. v. Loxahatchee Marina, Inc.*, Fla.App., 236 So.2d 12 (1970), (leased motorcycle not a product); *Liberty Mutual Insurance Co. v. Hercules Powder Co.*, supra, (research equipment sent to another for testing not a product); *Philadelphia Fire & Marine I. Co. v. City of Grandview*, Wash.Supr., 42 Wash.2d 357, 255 P.2d 540 (1953), (methane gas introduced into city water lines not a product within the exclusion).

The cases cited by Mount Vernon are distinguishable on this last point. In *Meisner v. Aetna Life and Casualty Co.*, N.J.Super., 124 N.J.Super. 343, 307 A.2d 105 (1973), *cert. denied*, N.J.Supr., 63 N.J. 559, 310 A.2d 474 (1973); *Cobbins v. General Accident F. & L. Assur. Corp., Ltd.*, Ill. Supr., 53 Ill.2d 285, 290 N.E.2d 873 (1972); *Tidewater Associated Oil Co. v. Northwest Casualty Co.*, 9th Cir., 264 F.2d 879 (1959); *New Amsterdam Casualty Company v. Ellzey*, 5th Cir., 240 F.2d 618 (1957); *Brainard v. Aetna Casualty and Surety Company*, 17 Misc.2d 810, 187 N.Y.S.2d 435, the injury occurred after the product was *sold.*

Thus, since Pied Piper's devices are not products falling within the exclusionary clause, Mount Vernon has a contract duty to defend its insured.

## II.  CONTRACTUAL LIABILITY COVERAGE

Contractual liability coverage is protection for liability which accrues under a written agreement between the insured and another party. 3A, L. Frumer & M. Friedman, Products Liability, § 50.01B[5] (1981). The policy definition of "contractual liability" is:

"... liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;"

In this case the contractual liability is that assumed under a hold harmless agreement between Pied Piper and Food Fair. The contractual liability attachment indicates that Mount Vernon agreed "to hold the certificate holder [Food Fair] harmless from all liability loss or damage arising out of the presence maintenance operations or use of the insured devices." The contractual liability provisions are subject to exclusions. Endorsement # 3 limits the liabilities to coverage "solely as respects to the presence, maintenance, operation or use of the Insured's devices."

Since the products hazard exclusion has been found inapplicable in regard to the kiddie rides in question, that exclusion has no effect as to the contractual liability attachment. However, ambiguity arises as to whether the definition of contractual liability excludes only unwritten contracts, such as implied warranties (Pied Piper's position), or whether all warranties as to fitness, quality, or workmanship, written or unwritten, are excluded (Mount Vernon's position).

Insurance is often termed a contract of adhesion because the insurer drafts the terms. *State Farm Mutual Automobile Ins. Co. v. Johnson*, Del.Supr., 320 A.2d 345 (1974). Therefore, when an ambiguity exists in the language of a policy, it is construed strictly against the insurer. *Lamberton v. Travelers Indemnity Company*, Del.Super., 325 A.2d 104 (1974), *aff'd*, Del. Supr., 346 A.2d 167 (1975). In this case, the language of the contractual liability clause is ambiguous and susceptible to several meanings. See *Cheseroni v. Nationwide Mut. Ins. Co.*, Del.Super., 402 A.2d 1215 (1979), *aff'd*, Del.Supr., 410 A.2d 1015 (1980).

One interpretation of the clause is that the contractual liability assumed is limited to liability arising only from written contracts, not from implied contracts or implied warranties. 3A, L. Frumer & M. Friedman, Products Liability § 50.01B[5] (1981); *Carboline Company v. Home Indemnity Company*, 7th Cir., 522 F.2d 363 (1975). All of the Bodan claims emanated from the "use" of the kiddie rides. The language of

the attachment is inclusive and does not preclude warranty claims. Under this analysis, the Bodan claims, which relate to the matters specifically designated in the hold harmless agreement, would be covered.

An opposing view maintains that written or unwritten warranties of quality or fitness of a product or warranties of workmanship are not within the contractual liability coverage. If the insured's certificate holder is protected at all, it is only through products hazard insurance. 7A, Appleman, § 4508.01 at 349 (1979). *See Southwest Forest Industries, Inc. v. Pole Buildings, Inc.*, 9th Cir., 478 F.2d 185 (1973). Under this view, warranty claims relating to Food Fair's liability would thus be excluded from contractual liability coverage.

■ A third interpretation evolves from the typewritten language on the attachment and from rules of construction. The language delineates the risks insured under the hold harmless agreement: Mount Vernon specified that it would "hold the certificate holder harmless from *all liability* . . ." (emphasis added). When construing insurance contracts, the typewritten language generally controls the printed language. 1B, Appleman, § 4255, at 44. Further, where an ambiguity exists, the language is usually construed most strongly against the drafter, *Steigler v. Insurance Co. of North America*, Del.Supr., 384 A.2d 398 (1978), and the meaning which will sustain the claim and cover the loss should be adopted. *Simses v. North Am. Co. For Life & Health*, Conn.Supr., 175 Conn. 77, 394 A.2d 710 (1978). Thus, under this interpretation, Mount Vernon is required to provide coverage for warranty claims arising from the use of Pied Piper's devices.

■ Since an insurance contract should be read to accord with the reasonable expectation of the purchaser, *Steigler v. Insurance Co. of North America*, supra, and since it was reasonable for Pied Piper to expect that it was buying protection for all claims asserted against Food Fair in relation to the "presence, maintenance, operations or use" of the devices, this Court finds that the contracted liability provision is con-trolled by the typed language. Mount Vernon is obligated to provide contractual liability coverage to Pied Piper for liability incurred by the certificate holder.

## III.  COUNTERCLAIMS

■ Pied Piper's alternative claims are mooted by the finding of a duty of defense under the policy terms. However, if the opposite conclusion had been reached, Mount Vernon would not have been liable for the failure of a broker to procure appropriate insurance for Pied Piper. Mount Vernon established by affidavit that Pied Piper's insurance agent was a broker as defined by 18 *Del.C.* § 1704. The actions of a broker are not imputable to the insurance company. *National Fire Ins. Co. v. Eastern Shore Lab, Inc.*, Del.Supr., 301 A.2d 526 (1973); *Conestoga Chemical Corp. v. F.H. Simonton, Inc.*, Del.Supr., 269 A.2d 237 (1970); *Ottendorfer v. Aetna Insurance Company*, Del.Supr., 231 A.2d 263 (1967).

Pied Piper, the moving party, failed to show that it was entitled to judgment as a matter of law on the allegation of waiver. This is a factual issue and better left to the determination of a jury. The question of the continuing duty to defend on the alleged non-warranty claim in the Bodan complaint has been subsumed into the holding on the contractual liability provision.

The Court concludes that under the facts presented in the present record, Mount Vernon must provide insurance coverage to Pied Piper under the policy and under the contractual liability endorsement. Therefore, Mount Vernon's motion for summary judgment should be denied and Pied Piper's motion for summary judgment should be granted.

IT IS SO ORDERED.